SHELDON C. HALL, et al. Respondents,

*vs.*

NATHAN G. STORRS, et al. Appellants.

### APPEAL FROM MILWAUKEE COUNTY COURT.

The express orders or instructions of a principal, when they are clear, possible and proper, leave no discretion with the agent, but are absolutely imperative upon him.

Where a factor receives wheat with instructions to be sold for cash, and he sells it on credit, he is liable for all losses that may accrue to his principal.

A sale of property for cash, means that the money shall be paid down when the title to the property passed, and a sale and delivery for a bank check payable the next day after the sale, is not a sale for cash.

S. & Co., factors in the city of Milwaukee, received a consignment of wheat from H. & Co., residing in the country, with instructions to sell for cash. S. & Co., sold and delivered the wheat to M. & Co., and took their check for the amount, payable the next day. On the next day M. & Co. had failed, and the check was dishonored. Held that S. & Co. were liable for the loss.

A custom of trade or business that can vary or modify the language of express instructions of an agent or factor from his principal, must be established by the most certain, clear and satisfactory proof.

Such a custom must be ancient, uniform, notorious and reasonable.

This was an action brought in the county court of Milwaukee county, by the respondents against the appellants, to recover the amount of a certain consignment of wheat, forwarded by the respondents to the appellants, to be sold by the latter. The cause was tried by the court and judgment rendered for the respondents, from which judgment this appeal is taken. The case was presented to this court on the appeal upon an agreed state of facts which is fully stated in the opinion of the court.

*Emmons & Van Dyke* for the appellants.

The facts found by the court present the question of the validity of a usage of trade, for a factor to deliver without payment, or upon the receipt of a check payable the next day (in either case the intention being to collect on the day after sale) consignments of wheat sold by him for cash.

1. It is true as a general proposition, that express instructions are absolutely imperative upon the factor; but in the absence of instructions, or where their terms have a peculiar significance at the market where the article is to be sold, the usual and customary manner of sale is to be the rule for the factor—and the consignor and factor are both deemed to have contracted with a view to such custom or usage. Story on Agency, § 192, 199, et seq.; *Van Allen vs. Vanderpool*, 6 John. 69.

A person who deals in a particular market must be taken to deal according to the custom of that market, and he who directs another to make a contract at a particular place must be taken as intending that the contract may be made according to the usage of that place; even though he be ignorant of it. *Sutton vs. Tatham*, 10 Ad. and El. 27 ; *Bayliffe vs. Butterworth*, 1 Exch., 416 ; *Dwight vs. Whitney*, 15 Pick., 179.

Usage can never be set up in contravention of the contract, but when there is nothing in the agreement to exclude the inference, the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates. *Hinton vs. Locke*, 5 Hill, 439.

A custom or usage to be admissable and valid must be certain, reasonable and sufficiently ancient to afford a presumption that it is generally known. *U. S. vs. Buchanan*, 8 How. S. C., 83.

This case admits then of criticism only upon the qualities, certainty and reasonableness of the usage.

Certainty, we suppose to import, that the usage, without extraneous circumstances, can be defined, both as to what it embraces, and its duration. This usage is defined as to duration, and requires no aid to make it intelligible.

Reasonable, we suppose to mean that the usage shall not control any rule of law, or unreasonably postpone the party affected by it, as to his just right. The only particular in which such an usage can conflict with a rule of law is that it converts the sale into a credit. This is not the effect of this usage; such a sale having often been held not to pass the title. *Smith vs. Lynes*, 1 Seld., 41.

The right of the owner cannot be said to be unreasonably postponed or postponed at all, as the right to demand payment is not stayed for one moment.

If the usage then is certain and reasonable, i. e., does not vary the contract between the principal and factor, it is admissable under the rule, that " in mercantile transactions, and others of ordinary occurrence, evidence of established usage is admissable, not merely to explain the terms used, but to annex customary incidents, when such usage is not expressly or impliedly excluded by the tenor of the written instrument. *Sayers vs. Jones*, 2 Ex. 111 ; 1 Smith's Lead'g Cases, 5th Ed. 670 and notes.

As to the first branch of the office of a custom, i. e., to explain the terms used, there is no better proof that the term cash is not so definite as to exclude interpretation, than the fact that it has frequently been the subject of argument and adjudication. Because it has a known meaning, is no more reason why it should be held to be positive and absolute in its import than the words pound, cwt., thousand, each of which has a general known signification, and yet has been frequently interpreted to signify differently according to the understanding in certain localities and trades. 1st Smith's Ld'g Cases, note p. 584, et. seq.; *Sontier vs. Kellerman*, 18

Mis. 509; *Hinton vs. Locke,* 5 Hill, 437; *Eaton vs. Smith,* 20 Pick. 150; *Barton vs. McKelway,* 2 N. Jer. 185.

As to the second branch of the office of a custom, i. e., to annex customary incidents, when not expressly or impliedly excluded by the tenor of the contract: In the familiar case of *Wigglesworth vs. Dallison,* Dougl., 201, although it was admitted that at common law, the possessor of a term limited to a certain day, could not, after the expiration of the term, gather the growing crop, it was nevertheless held that a custom in a particular locality so to do, was good. 1st Smith's Lead'g Cases, note p. 583.

In cases of commercial contracts, see as to the interpretation of terms used and powers conferred upon factors in certain trades. 1st. Smith's Lead'g Cases, notes p. 584–5.

But it has been expressly adjudicated that a usage similar to this is valid. A factor with orders to sell for cash, sold and delivered the goods, but according to the usage, did not send in his bill until the next day, before which time the purchaser had become insane, and did not pay it; held that such sale, being according to usage, was no breach of orders, and that the principal could not maintain his action against the factor. Story on Sales, 95; *Clark vs. Van Northwick et al.* 1 Pick. 343; *Steward vs. Scudder,* 4 Zabr., (N. J.) 96; *Van Allen vs. Vanderpool,* 6 Johns. R. 69.

The counsel further proceeded to review the authorities cited by the opposing counsel, but the comments thereon are necessarily omitted.

*Finches, Lynde & Miller* for the respondents.

1. As a general rule, an agent entrusted with property to sell must sell for cash, unless he has express authority to sell on credit. 2 Kent Comm., 622; Dunlap's Paley Agency, 27.

2. Where there is an established usage of the trade, the factor may sell on credit. But in order to establish such a

usage, and make it available, it must be "known, certain, uniform, reasonable, and not contrary to law;" and it is submitted that the finding of the court discloses no such usage.

In *Bliss vs. Arnold,* 18 Vermont, 254, it was decided that a commission merchant directed to sell for cash, could not protect himself by a custom existing among commission merchants to deliver articles and wait for the pay. In that case the court say: " In all sales for cash the money must be paid when the property is delivered. It is wholly inconsistent to claim that a sale for cash means a sale on a credit for a week or ten days." It is claimed by the respondents that Storrs & Nute having on the evening of the 15th forwarded to the respondents a statement of the account of sales, and forwarded the amount, less their commissions, that it was a payment by them of the amount. The court in its opinion says that, " And I cannot doubt from the evidence that this remittance was intended as payment for the wheat sold on the 15th." The evidence offered in the court below is not before this court, and we must take the fact as found by the court that it was a voluntary payment, and being a voluntary payment, and no mistake as to the facts, the appellants are not entitled to recover it back. *Hill vs. Green,* 4 Pick. 114; *Parsons vs. Gloucester Bank,* 10 Pick. 533; *Clark vs. Dutcher,* 9 Cowen, 674; *Mowatt vs. Wright,* 1 Wend 640; *Sillman vs. Wing,* 7 Hill,.159; *Supervisors of Onondaga vs. Briggs,* 2 Denio 40; *Vert vs. Weir,* 4 Black., 135.

*By the Court,* Cole, J. This cause was tried before the county court of Milwaukee county, without a jury, and a judgment was rendered for the respondents. The counsel for the respective parties have admitted by stipulation that the following facts were found by the county court:

1. " That the respondents resided in Whitewater, and did

Vol. VII. 18

business at that point, and that the appellants were factors and commission merchants in the city of Milwaukee.

2. " That the respondents on the 15th day of May, 1857, shipped a quantity of wheat consigned to the appellants, that the appellants received the wheat on the same day and sold it to Montgomery & Cutler, and took in payment therefor, the check of Montgomery & Cutler, dated on the 16th day of May, 1857, one day after the sale. And that on the evening of the same day, the appellants forwarded to the respondents a statement of the amount of sales, less their charges and commissions, and forwarded in the same letter the amount of said sale less their commissions and charges."

3. " That the check of Montgomery & Cutler was presented on the day it bore date, to-wit: on the 16th, and payment was refused, and that Montgomery & Cutler on that day were insolvent, and that the check has not been paid."

4. " That by the usual course of business in Milwaukee, commission merchants collected cash sales on the day after delivery."

5. " That on the 16th of May, the respondents shipped another quantity of wheat to the appellants, which they received and sold for cash, and returned to the respondents a statement of the sales, but did not forward the money received on such sales, and it is for the last sale that the suit is brought."

6. " That up to the 16th of May, Montgomery & Culter were in good credit."

The appellants admit in their answer that the wheat was consigned to them by the respondents *to be sold for cash.*

Upon this state of facts the question arises, who is to sustain the loss of the Montgomery & Cutler check, the appellants or respondents? We are most clearly of the opinion that it must be the former.

We do not understand the general proposition to be controverted, that it is the first duty of an agent or factor whose

Hall et al. vs. Storrs et al.

authority is limited by instructions, to adhere faithfully to those instructions in all cases to which they properly apply. The express orders of the principal, when they are clear, possible and proper, leave no discretion with the agent, but are absolutely imperative upon him. If a person employs another to act for him in any lawful business, he has an undoubted right to limit and restrict the agent's authority as he thinks proper. And if the agent violates his duties and obligations to his principal, whether by exceeding his authority, or positive misconduct, or by negligence or omission in the proper functions of his agency, or in any other manner, and any loss or damage results therefrom to the principal, he is responsible therefore and must make full indemnity. There are a few exceptions when an agent is held justified in cases of extreme necessity, arising from unforseen emergencies in departing from positive instructions. But these exceptions have no application to this case. Here the appellants in effect concede that they received the wheat, and were instructed to sell it for cash. Is there anything ambiguous about such an instruction? In the common, ordinary, popular acceptance of the language, was it not a clear, positive and unqualified direction not to sell or pass title to the wheat without cash in hand? When a country merchant forwards wheat to a factor in Milwaukee, to be sold for cash, does he expect that the grain will become the property of another without the consideration being paid down? A sale then for cash we suppose means that the money shall be paid when the title to the property passes. This is the common, popular sense of the language, and the appellants had no authority except to dispose of the wheat according to the strict orders of their consignors. And if they have assumed the power of departing from the instructions, and a loss has occurred in consequence of it; they must sustain it and not their principals. It appears to us, that to saction a latitude of action in the factor beyond

the rigid commands of the principal would be most mischievous, and unsettle long established principles of law.

But it is said that in the absence of instructions or where the terms of the instructions have a peculiar signification at the market where the article is to be sold, the usual and customary manner of sale is to be the rule for the factor, and the consignor and factor are both deemed to have contracted with a view to such custom or usage. This may all be very true, and yet how does the proposition help the appellants' case?

We have already stated that in our judgment there was nothing peculiar or doubtful or ambiguous in the direction given by the respondents to sell the wheat for cash. That in the popular and common sense of the language, such a sale is understood to be one where property is sold for money in hand. And that it is an ingredient or condition of a cash sale that the title to the property does not pass to the purchaser until the purchase money is paid. We are aware that cases can be found which go to establish the doctrine that when a factor has received goods with direction to sell for cash, but which he does not sell for cash, but on short time, according to the usage and custom of the market, it has been held that such a sale was in compliance with the orders of the principal. See *Clark vs. Van Northwick,* 1 Pick. 342 ; *Contra, Catlin vs. Smith,* 24 Vt. 85 ; *Barksdale vs. Brown, et al.* 1 Nott and McCord 517 ; *Leland vs. Douglass,* 1 Wend. 492. We doubt exceedingly the soundness and correctness of the rule which permits a usage or custom in any particular business or trade to qualify or vary the instructions to an agent, and allow him to show that by the understanding of merchants a sale on credit was no violation of an order to sell for cash. But if it may be shown that terms in any particular business or trade, by usage have acquired a meaning different from their ordinary acceptation, and that by such custom a cash sale does not mean what the language imports, then it is obvious that

the evidence of such a custom should be most clear and satisfactory. Now, we do not think the proof in this case would at all warrant us in saying that a local usage existed in Milwaukee so "ancient, uniform, notorious and reasonable" that the respondents and appellants must be presumed to have contracted with reference to it, and that according to this usage a cash sale is when property is sold one day and the purchase money is collected the day after delivery, and we should not be authorized from anything we can see in this case in supposing such a custom to exist.

And manifestly if such a custom does obtain in Milwaukee and the appellants relied upon it to excuse themselves from a seeming violation of orders to sell for cash, then they should have established the custom beyond all reasonable doubt. Since they did not show the existence of such a custom, we must hold them to all the responsibility of violating the instructions of their principals, and they must lose the amount of the check of Montgomery & Cutler, instead of the respondents.

Something was said upon the argument by the counsel for the appellants, about the practical inconvenience which would result from our holding, that in the grain trade in Milwaukee, on cash sales the money must be paid at the time the property was delivered. But with the practical inconvenience of the business, we have nothing to do. Our duty is to hold parties to their contracts and to the measure of liability which the law imposes upon them. But we suppose if factors should find it impracticable or impossible in cash sales in the grain trade, to have the purchase money paid down before a delivery of the property, they can refuse to receive grain consigned to them to be sold for cash.

It will be seen that we have placed the appellants liability in this action rather upon the ground that they violated the instructions of the respondents in reference to the sale, than

upon the ground of a settlement or accounting between the parties. The county court in the opinion filed, seemed to think that it was a voluntary payment of the amount of the check by the appellants without any mistake of facts, and that therefore it ought not to be recovered back by them.

It is not necessary for us to go into this branch of the case. We are satisfied that upon the record the judgment is correct and must be affirmed.