EDWARD F. SOWARDS

*v.*

EDWARD PRITCHETT.

| 37 | 517 |
|----|-----|
| 51a | 639 |
| 37 | 517 |
| 88a | 480 |
| 37 | 517 |
| 190 | ¹623 |
| 37 | 517 |
| 197 | ⁷394 |

1. NOTICE OF SALES—*posting them in public places.* A decree for the sale of land directed notices thereof to be posted in five public places in the neighborhood. Upon exceptions taken to the report of the sale, it appeared two of the notices were posted at school-houses, but it did not appear they were being occupied at the time; though, even if that were so, the court were not prepared to say they could judicially know that they would afford notice to a single man in the neighborhood.

2.  The other notices were posted upon roads, one of them only being mentioned as a public road, leaving it rather to be implied the others were not. Six persons living in the vicinity of the land had never seen any of the notices, and none were posted about the court-house, nor was any published .in the county newspaper.  But few persons attended the sale, and the property sold for about two-thirds of its value.  *Held,* the notice of the sale was not sufficient.

3.  SAME—*of the necessity of sufficient notice.*  Whether the want of sufficient notice of such a sale operated to prevent competition thereat, or was occasioned by design or accident, will make no difference.  There must still have been proper notice.

4.  SAME—*of the time for which notice should be given.*  The decree for the sale fixed no time for which notice should be given.  In this case, only twenty days were given ; and while such notice might not, of itself, afford sufficient ground for setting aside a sale, yet, in connection with inadequacy of price, or other irregularity, it is an important circumstance.

5.  It has not been the practice of courts to make sales without redemption upon so short a notice.

6.  By analogy with the time required for sales by executors and administrators, which is six weeks, it would seem the legislature regarded that as but reasonable time for sales of real estate.

7.  JUDICIAL SALES—*inadequacy of price.*  Land was sold under a decree at about two-thirds its value ; and it was held, that while such inadequacy of price would not, alone, be ground to set aside the sale, yet it would have its weight when considered with other evidence, in preventing an approval of the Master's report of the sale.

8.  JUDICIAL SALES—*action thereon*—*discretion of the court.*  It is the cherished object of the courts to give stability to judicial sales, and at the same time protect the rights of the owner.  In this the Chancellor has a large discretion, which will only be interfered with by the appellate court when it appears from all the circumstances that wrong or injustice has been done.

9.  SAME—*notice should be prescribed in the decree.*  It is much the better practice for the Chancellor, in ordering sales of property, to prescribe the time and manner in which notice thereof shall be given, as well as the terms and conditions of the sale, and not leave these to the discretion of the Master.

WRIT OF ERROR to the Circuit Court of Woodford county; the Hon. SAMUEL L. RICHMOND, Judge, presiding.

It was provided in the last will and testament of Henry Sowards, that as soon as convenient after his youngest son, Edward F. Sowards, should arrive at his majority, the lands

belonging to the estate should be sold, and the proceeds divided among the then surviving children of the testator.

Henry Sowards, the testator, having died, and Edward, his youngest son, having attained his majority, the latter exhibited his bill in chancery in the court below, against the other devisees, for the purpose of executing that provision of the will.

Such proceedings were had in that suit, that at the April term, 1863, a decree was entered, directing the complainant to proceed to sell the lands as provided for in the will, in a reasonable time, and that he report to the court his doings at the next term; that he sell the land at public auction, posting up written or printed notices thereof in five public places in the neighborhood, setting forth therein the time, place and terms of sale, describing the premises with reasonable certainty; that the sale should be for cash, or part cash and the balance upon credit, etc.

At a subsequent term, the complainant reported to the court, that in pursuance of the decree, he posted up five written notices on the 22d day of July, 1865, at the places named in the affidavit attached to his report, showing that he would sell the land mentioned in the decree, on the premises on the 11th of August then following; and that he did, in pursuance of such notice, proceed on the day named, at public auction, to sell the same; that John Sowards became the purchaser at the sum of $1,500, he being the highest and best bidder therefor; and the purchaser having complied with the terms of the sale, the commissioner executed to him a deed for the premises.

The affidavit of the commissioner states that he posted up the notices on the day named in the report, at the following places: One at the school-house at or near Crow Creek, in Marshall county, Illinois: one at the forks of the road leading to Chillicothe and Lacon; one at the Jefferson Horshor school-house; one at the forks of the roads at Low Gap, and one at or near Gibbs', on a public road leading up Crow Creek.

One of the defendants, Edward Pritchett, appeared and filed his exceptions to the report of the sale, and set forth the following grounds :

1. The commissioner did not give the notice required by the decree.

2. He sold the land at a price greatly below its real value — that is, he sold the same for $1,400, when it was worth $2,500 at the time of the sale, and it would have sold for that sum if the commissioner had given the requisite notice.

In support of the exceptions, the affidavits of six witnesses were read : William Hunter lived two and a-half miles from the land, on a public road, and never saw any notice of the sale, and believes none were posted. William Crank lived one mile from the land, and made the same statement. Two others lived about a-half a mile from the premises, and saw no notices, and believed there were none. Another lived less than a-half a mile, and another adjoining the land, and stated the same. There were about one hundred and fifty acres of the land, which they all thought was worth fourteen dollars per acre, and would have sold for that at a fair sale.

The sheriff, clerk and deputy clerk of the Circuit Court stated that they never saw any notice of the sale posted about the court-house; and the editor of the county paper stated that no notice was ever published in his paper.

The defendant, Pritchett, also presented his own affidavit, in which he says he is legally and equitably entitled to three-fifths of proceeds of sale of lands; that since rendering decree has moved out of immediate neighborhood; employed Crank, who lives in neighborhood, to look out for notice of sale; said Crank did keep diligent watch for said notice at all public places in vicinity of said land; no such notices were posted; that E. F. Sowards and Solomon Sowards did connive with one John Sowards, and others guilty, and fraudulently, without complying with said decree, to sell said land

for the sum of $1,400, as he is informed; says said land is worth $2,500, and would have brought that amount had it been sold in compliance with said decree.

In support of the sale, the affidavit of one Cutright was read. He stated that he was the auctioneer who sold the land; that there were several others present besides the purchaser, who bid on the land. Said the sale was fair to owners and bidders. He thought the land sold for all it was worth. Another witness thought it was not worth more than a thousand dollars.

The court below, upon this evidence, refused to approve the commissioner's report, and ordered a re-sale of the property.

The complainant brings the case to this court upon writ of error, for the purpose of bringing in review the action of the Circuit Court in not sustaining the action of the commissioner.

Mr. JOHN CLARK for the plaintiff in error.

Messrs. INGERSOLL & PUTERBAUGH for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the court:

At the April term, 1863, of the Woodford Circuit Court, plaintiff in error obtained a decree against defendants in error, authorizing him to sell the land in controversy, under the last will of Henry Sowards, deceased. A sale was made, and afterwards, at the August term of the court, 1864, he filed his report and asked its approval. Exceptions were taken to the sale, and on a hearing they were allowed, the sale set aside, and a new sale ordered. To reverse that decree, this writ of error is prosecuted.

The objections taken to the report of the sale, are, that insufficient notices were given of the time, place and the terms of the sale, and that the property was sold

at a sacrifice. It appears that five notices of the sale were posted, but whether they were in the most public places in the neighborhood, as required by the decree, does not appear. The affidavits in support of the validity of the sale particularly state where they were posted, but fail to say that they were the most public places. Two were posted at school-houses, but it fails to appear whether they were occupied by schools at the time; but even if they were, we are not prepared to say that we could judicially know that they would afford notice to a single man in the neighborhood. The object of giving notice is that persons desiring to purchase may learn the time and place of sale, and whether these notices were calculated to convey such information does not appear.

The other notices are stated in the affidavits to have been posted on roads, but whether two of them were public roads is not stated. The other, however, was stated to be a public road, which would rather seem to imply that the other two were not, or it would have been stated. Six different persons testify that they were expecting a sale, some of them wishing to purchase the lands, and were looking for notices, but saw none. They all lived near to, and some of them adjoining, the land, and if the most public places had been selected, it is strange that so many persons seeking notice, were unable to obtain it. They, from that fact, state it as their opinion, that notices were not posted. The clerk, the sheriff and the deputy sheriff all testify, that a notice of the sale was not posted at the court-house; nor is there any pretence that such a notice was published in a county newspaper.

Here was a large and valuable property to be sold at auction without redemption, and we find half a dozen of the near neighbors having no notice of the sale. If the number of notices required by the decree had been posted in the most public places in the neighborhood, could it be that none of them ever saw or heard of them. To us it seems almost impossible. Nor does it appear, that more

than one witness was introduced to prove that they had seen the notices, or that they were posted. Nor does it appear that any considerable number of persons were present when the sale was made. It is true, the auctioneer swears that there were several, but he does not give the number. If there were two or three persons at the sale, this statement would be true. For aught that appears, they may have consisted of the executor, the auctioneer and the purchaser. And whether the want of notice 'operated to prevent competition at the sale, or was by design or accident, can make no difference.

Again, but twenty days' notice was given. And whilst the decree fixes no time, it is the object of the law to obtain the best price that can be fairly had at such sales, and as far as possible prevent a sacrifice of the rights of the owners. In ordinary sales of real estate by executors and administrators, the Statute requires six weeks' notice to be given, by posting notices in four of the most public places in the county, and a similar notice to be published in the nearest newspaper. It would, therefore, seem to be regarded by the Legislature that this is but a reasonable notice. So far as we are aware, it has never been the practice of courts to make irredeemable sales of real estate on so short a notice. And whilst such a notice might not, of itself, be sufficient ground to set aside a sale, yet, when connected with inadequacy of price, or other irregularity in conducting the sale, it will be regarded as an important circumstance.

The evidence, we think, abundantly shows that the land was not sold for more, or but little more, than two-thirds of its value. And although such an inadequacy of price would not alone be ground to set aside a sale, yet it will have its weight when considered with other evidence, in withholding an approval of the Master's report of the sale. Although it is the duty of the Chancellor to protect a purchaser at a Master's or Commissioner's sale, it is equally his duty to prevent a sacrifice of the property, by fraud, accident or negligence of the officer in conducting the sale. If he can see

that the sale has not been fairly made, by reason of a non-compliance with the law or the terms of the decree, and loss would result to the owner, he should not hesitate to withhold his approval. It is a cherished object of courts to give stability to judicial sales, and at the same time, as far as possible, protect and guard the rights of the owner. In all such cases the Chancellor is necessarily vested with a large discretion, and he must so exercise it as will promote justice and protect the rights of parties. And in the exercise of that discretion this court will not interfere if it seems to have been soundly exercised. We will only reverse when we can see from all the circumstances that wrong or injustice has been done.

We are clearly of the opinion, that the court below committed no error in withholding an approval of the report of the sale, and in setting it aside, and ordering the land to be again sold. And we are of the opinion, that it is much the better practice for the Chancellor, in ordering sales of property, to fix the time and manner in which notice shall be given, together with the terms and conditions of the sale. Such directions would control the action of the Master, and would greatly diminish the probabilities of having sales set aside. It would operate to assure the purchaser that his bid would be received, if there was no departure from the requirements of the decree in conducting the sale, and thereby tend to increase the price of property thus sold. It would remove all question as to whether the Master was exercising a proper discretion in making the sale. For aught that appears, it may have been a question in the mind of the purchaser whether twenty days' notice was sufficient for such a sale, and may have operated to depress the price.

The decree of the court below must be affirmed.

*Decree affirmed.*