CERTAIN LANDS UPON WHICH TAXES ARE DELINQUENT (Located in City of Coronado Beach, Volusia County, Florida) Defendants, WALTER D. GREEN, v. CITY OF CORONADO BEACH, a Municipal Corporation, etc., Plaintiff-Appellee, WALKER WHITE (The purchaser at the Special Master's Sale).

175 So. 774.
Opinion Filed July 31, 1937.

*J. U. Gillespie,* for Appellant;

*Smith & Fuller,* for Appellee.

BUFORD, J.—This was a suit to foreclose municipal tax liens.

Decree *pro confesso* was entered on January 4, 1937. Final decree was entered on January 8, 1937. Notice of sale and proof of publication was filed on February 1, 1937.

On February 2, 1937, defendant filed petition to vacate and set aside the decree *pro confesso* and final decree. Amongst other things in that petition, it was alleged:

"5. That pursuant to the decree *pro confesso* and said final decree, a purported Special Master's Sale was held on the first day of February, A. D. 1937, in front of the Court House door at the City of DeLand, Volusia County,

Florida, by W. R. Clements as Special Master herein, two weeks notice of said Special Master's Sale having first been given by the said W. R. Clements as Special Master aforesaid, by three successive weeks publication in the New Smyrna Daily News, a newspaper published in Volusia County, Florida, said notice being published on January 16, 23. and 30, A. D. 1937.

"6. That pursuant to said notice, D. D. Kreis of Coronado Beach, Volusia County, Florida, as agent for this defendant, Walter D. Green, appeared at said sale for the purpose of redeeming petitioner's property above described from said sale for said delinquent taxes by bidding in the said premises on behalf of said defendant for the amount of all taxes, penalties, court costs, attorney's fees, abstract costs and advertising costs, and did inform the said W. R. Clements, Special Master aforesaid, at said sale that she appeared for the above purpose and the said D. D. Kreis did then and there bid the following sums of money for the properties above described, respectively, to-wit: For Lot 10 of W. L. Cooper Subdivision of Robert Walker Grant the said D. D. Kreis did bid the sum of $250.00, and for lot 11 of W. L. Cooper Subdivision of Robert Walker Grant the said D. D. Kreis did bid the sum of $300.00, both of said bids being in an amount in excess of the total of delinquent taxes, penalties, court costs, attorney's fees, abstract costs and advertising costs against each of the said described properties; that one Walker White was then and there present at said sale and did bid for each of said properties the sum of $275.00 for lot 10, and the sum of $500.00 for lot 11, and although the said D. D. Kreis was then and there prepared to pay to said Special Master aforesaid the amount of the respective bids made by her, nevertheless the said Special Master did not accept her said bids nor require her to exhibit to him the cash, but on the contrary

accepted both of the bids then and there made by the said Walker White and then and there declared the premises sold to the said Walker White.

"7. · That the premises above described are far more valuable than the sums bidden therefor by the said Walker White in that lot 10 has erected on it a certain one-story stucco office building and lot 11 has erected on it a two-story stucco dwelling house and both of said lots are located on Flagler Avenue in said City of Coronado Beach, which is the main thoroughfare of said City, and the actual cash value of lot 10 with the improvements thereon is $1,000.00, and the actual cash value of lot 11 with the improvements thereon is $6,000.00; that the bids accepted by the said Special Master are grossly out of proportion to the actual cash values of the premises described and a confirmation of the said purported sale by your Honorable Court and the sale of the said premises to the said Walker White divesting the title of this defendant will work a gross hardship upon this defendant and an irreparable injury and in effect will amount to the taking of his property without due process of law and without adequate compensation therefor."

The petitioner also in the petition offers to pay the amount of taxes due the municipality which amount was less than the amount bid for the property and which the petitioner might have paid at any time prior to the sale and redeemed the property from the lien of the taxes.

Answer was filed to the petition. Affidavits were produced before the Chancellor. The matter was argued by the attorneys for the respective parties. The Chancellor denied motion to vacate and set aside the decree *pro confesso* and the final decree and confirmed the sale. It is apparent from the record that the petitioning land owner, appellant here, appeared at the sale, through her agent, and,

through such agent, submitted bids to the Special Master at the sale, did not offer to redeem or attempt to redeem the lands prior to the sale, but came in after the sale, which was made with due notice to the land owner, and filed a petition asking that the decree *pro confesso*, final decree and sale be vacated and set aside and that the petitioner, appellant here, failed to show cause sufficient to convince the Chancellor that the petition should be granted: : : . The fact is that the record shows that the petitioner, acting through his agent, had taken part in the proceedings, as heretofore stated, had deliberately waived his right to redeem the lands from the lien for taxes and had failed to meet the bid of the successful bidder at the Master's Sale.

The matter of setting aside decree *pro confesso* and final decree was one about which the Chancellor should exercise discretion with caution. There was no sufficient ground shown why he should set aside either the decree *pro confesso* or the final decree. The record shows that there was a large amount of State and county taxes due and unpaid on the property and that lien for such taxes remained a charge against the property after the sale. So necessarily the Chancellor took into consideration the amount of that lien in determining the sufficiency of the price bid. The rule is well settled that a judicial sale regularly made in the manner prescribed by law upon due notice and without fraud, unfairness, surprise or mistake will not generally be set aside or refused confirmation on account of mere inadequacy in price, however great, unless the inadequacy is so gross as to shock the conscience and raise the presumption of fraud, unfairness or mistake. 16 R. C. L. 95 and cases there cited. See also Mitchell v. Mason, 75 Fla. 679, 79 Sou. 163, in which we said:

"Inadequacy of price in connection with other circumstances having a tendency to cause such inadequacy result-

ing in injury is considered sufficient grounds to set aside the sale, especially if the circumstances result from the mistake of one whose duty it is under the decree to make sale of the property, yet the Chancellor has a large discretion which will only be interfered with by the appellate court in a clear case of injustice. See Sowards v. Pritchett, 37 Ill. 517; Glenn v. Clapp, 11 Gill & J. (Md.) 1; Pattison v. Joselyn, 43 Miss. 373; Eberhart v. Gilchrist, 11 N. J. Eq. (3 Stockton) 167; Schroeder v. Young, 161 U. S. 334; 16 Sup. Ct. Rep. 512; Mechanics Saving & Building Loan Ass'n v. O'Conner, 29 Ohio St. 651; Young v. Teague, Bailey's .Eq. (S. C.) 13.

"There is no question as to the regularity of the sale, such as lack of published notice, improper time, place or terms of sale, nor lack of the jurisdiction of the court, nor authority of the Special Master to sell, and it appears that the sale was duly confirmed by order of the court the following day."

And further, in that opinion, we said:

"Nor is it very clear from the motion or the affidavits supporting it that any certain person was ready, willing and able to pay a greater price for the property than the amount for which it was sold. The affidavit of Mitchell himself does not state what amount he was willing to have paid for the property, nor that he was able to pay such price. This affidavit did state that John J. Whitaker and Henry A. Hudnall wished to purchase the property for the sum of seventy-five thousand dollars the day of the sale and had 'their checks certified with them for that purpose' and were not at the sale because of the Special Master's statement that he would not sell. But Hudnall's affidavit is not in the record, and Whitaker's affidavit merely stated that he and Hudnall 'were prepared to bid' that amount and had made all preparations to purchase the property and

had it not been for the announcement by the Special Master 'would have been present at the sale.'

"This particular irregularity on the part of the Special Master was known to the movant Mitchell when he filed his first motion to vacate and annul the proceedings, but he seems not to have included in such motion that ground of attack. He may be successfully met at this point by the rule of *res adjudicata*. See 1 Van Fleet's Former Adjudication 96. Jay v. DeGroot, 2 Hun. (N. Y.) 205. Knowledge of the same came to him as early as four o'clock in the afternoon of the day of sale, yet he seems not to have appeared before the Chancellor and opposed the confirmation of the sale. So it cannot be said that the existence of the supposed irregularity was not known until after the confirmation of the sale by the court.

"The order of confirmation is equivalent to an adjudication that the sale was one proper to be approved. It creates a presumption of the regularity of the proceedings. And while an interested party may attack an order of confirmation upon the grounds and in the manner in which the order in this case is attacked, we think it is proper to give to the Chancellor's decision the same consideration that is given to his decisions upon any other matter before him resting upon evidence. Unless it clearly appears that his decision was erroneous, this Court will not disturb his ruling."

In that case the order of the Chancellor refusing to grant the motion to set aside the sale was denied.

The fact that appellant's agent did not properly look after appellant's interest is not chargeable to the appellee.

In Oxford Lake Line v. First National Bank of Pensacola, 40 Fla: 349, 24 Sou. 480, it was held:

"It is the privilege of the principal to give instructions and the duty of his agent to obey them. Any unauthorized

deviation from or neglect of the principal's instructions whereby damage results will entitle him to an action against the agent, even though the latter in deviating from or neglecting to obey instructions, acted in good faith and honestly believed he was acting for the best interest of his principal. Mechem on Agency, No. 474-477; Story on Agency, No. 192, 217c; Walker v. Walker, 5 Heisk. 425; Bank of Owensboro v. Western Bank, 13 Bush. 526, S. C. 26 Am. Rep. 211; Hall v. Storrs, 7 Wis. 253."

We find no reversible error disclosed by the record and, therefore, the order appealed from should be affirmed.

It is so ordered.

Affirmed.

TERRELL, BROWN and CHAPMAN, J. J., concur.