202 So.2d 226 (1967)
BOBBY JONES GARDEN APARTMENTS, INC., a Florida Corporation, Sande Rocke and Mary A. Rocke, Appellants,
v.
The CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, a Connecticut Corporation, Appellee.
No. 67-84.
District Court of Appeal of Florida, Second District.
September 8, 1967.
*227 Millican & Trawick, Sarasota, for appellants.
Williams, Parker, Harrison & Dietz, Sarasota, for appellee.
HODGES, JOHN G., Associate Judge.
At a hearing on Plaintiff's Motion for Deficiency Decree in a suit, under Section 702.02, Florida Statutes, F.S.A., to foreclose a mortgage in the principal amount of $820,000, the defendants offered testimony as to value of the property involved. After entry of final decree, a sale had been properly held, certificate thereof duly filed and, no objection having been made, the Clerk's Certificate of Title had been issued according to law. The plaintiff had successfully bid in the property at the sale for $700,000.
The trial court refused to consider the evidence offered by defendants, basing its ruling that the foreclosure sale price was conclusive of the value of the property upon the decision of the Supreme Court in Southern Realty & Utilities Corporation v. Belmont Mortgage Corporation, 186 So.2d 24, and entered a deficiency decree, including interest and costs, for $185,707.60.
This interlocutory appeal is limited to the Chancellor's said ruling and poses for us the following precise question of law which is squarely before this Court for the first time:
DOES THE FORECLOSURE SALE PRICE CONCLUSIVELY ESTABLISH THE VALUE OF THE MORTGAGED PROPERTY SO AS TO BAR EVIDENCE OFFERED BY A DEFENDANT AGAINST WHOM A DEFICIENCY IS SOUGHT, UNDER SECTION 702.02, FLORIDA STATUTES, WHEN NO OBJECTION TO THE SALE HAS BEEN MADE?
The able and conscientious Chancellor understandably answered the question affirmatively but we cannot agree. Incidentally, he had answered in the negative before the Belmont case.
The legislative proscription, Section 702.02, Subsection (5), bearing upon the question, is as follows:
"VALUE OF PROPERTY.  The value of the property sold by the clerk shall be conclusively presumed to be the amount bid therefor and for which the property was sold at the sale, unless objection thereto shall be filed in the cause within ten days after the filing of the clerk's certificate of sale. If any objections to said value be filed within such ten day period, such objections shall be considered by the court; provided, however, that the filing of objections to the value of the mortgaged property shall not in any manner affect or cloud the title of the purchaser at the sale to the mortgaged property. If no such objections be filed, the value as *228 fixed herein shall have the same force and effect as if the court had decreed that the value of said property was the amount bid and for which the property was sold at the foreclosure sale." Section 702.02(5), Fla. Stat. 1965. (Emphasis added.)
The plaintiff confidently asserts that the clear and distinct statutory language involved leaves no room for judicial interpretation. He further contends that when the quoted section was enacted by the 1953 Florida legislature it had before it a line of cases culminating in the Supreme Court decision of Penn Mutual Life Insurance Company v. Moscovitz, 119 Fla. 708, 161 So. 80, and that the statute appears to be nothing more than a legislative codification of the case law of Florida as it existed prior to its enactment. He avers that the decision was reaffirmed in Southern Realty and Utilities Corporation v. Belmont Mortgage Corporation, supra, upon which the trial Chancellor's ruling was based. In addition, he maintains that the conclusiveness of the sale price as to value of the property was not a justiciable issue on appeal in the decisions of this court in Builders Finance Co., Inc., of St. Petersburg v. Ridgewood Homesites, Inc., 157 So.2d 551, and Weinstein v. Park Manor Construction Company, Inc., 166 So.2d 842, and argues that Southern Realty overruled the decision of the First District Court of Appeal in Kurkjian v. Fish Carburetor Corporation, 145 So.2d 523, and that of the Third District in Jonas v. Bar-Jam Corp., 170 So.2d 479, both of which enunciated that the sale price is not binding on application for deficiency decree.
Inasmuch as the cited District Court decisions exclusively gird the defendants' appeal, we are directly confronted with an interpretation of the two Supreme Court cases relied upon by the plaintiff and the legal effect, if any, they have upon the decisions advanced by the defendants. While attempting to judicially translate the meaning of the decisions which may appear to be confusing, largely because of the liberal use of the several courts of analogies and collateral conflicting observations not essential to determination of the specific issues involved, we should be permitted to take judicial cognizance of what is commonly known about mortgage foreclosures. In reaching a denouement, we should also keep in mind that the basic purpose of foreclosure is to fully subject the security pledged to the payment of the obligation involved and that thoughtful and sympathetic regard which finds support in established principles of fair play and equity as applied to the particular facts should not be overlooked.
The first Supreme Court case, Southern Realty and Utilities Corporation v. Belmont Mortgage Corporation, involved certiorari from a Third District proceeding wherein the mortgage holder sued to foreclose its mortgage but did not request a deficiency. Objections to the sale were filed on the grounds, among others, that consideration for the sale was inadequate and that it might be used as a deficiency in a later action at law. The trial court ordered a resale of the property and the mortgagee appealed. The Third District Court of Appeal reversed the trial court on the authority of the cases cited here by the defendants, holding, as to the first ground of objection mentioned, that the sale price in the case while it might have been inadequate was not grossly inadequate and was not "a sufficient ground for setting aside the sale in the absence of other circumstances tending to cause such inadequacy." (Italics ours.) The Third District Court also said, with respect to the second ground of objection advanced:
"The amount bid at a foreclosure sale does not conclusively establish the value of the property for the determination of the equities upon an application for a deficiency decree."
The Supreme Court, in assuming jurisdiction on certiorari taken by the mortgagor, observed:
"The statement of the District Court that: `The amount bid at a foreclosure *229 sale does not conclusively establish the value of the property for the determination of the equities upon an application for a deficiency decree' is the type of obiter dictum that generates conflict. It is in absolute conflict with our holding in Penn Mutual Life Insurance Company vs. Moscovitz." 161 So. 80. (Italics ours)
The Court then reversed the Third District and reinstated the Chancellor's order of resale of the property, using this language:
"The showing of inadequacy contained in the record plus the other factors appearing which indicate that respondent would be able to realize a very large deficiency judgment at law in addition to acquiring the mortgaged property, justified the chancellor in setting aside the sale, and in ordering an immediate resale thereof."
It is obvious that the Supreme Court employed the "obiter dictum" only as a basis for assuming jurisdiction on certiorari under the rule of Sunad, Inc. v. City of Sarasota, 122 So.2d 611. It clearly did not reverse the district court on the statement of law contained in the quoted obiter, because that question was not properly before the Court for adjudication. The Supreme Court simply asserted a conflict of the obiter in the Third District decision with language in its earlier decision of Penn Mututal Life Insurance Company v. Moscovitz, 119 Fla. 708, 161 So. 80 (1935), the second case relied upon by the plaintiff.
In the Penn Mutual case, the plaintiff-mortgagee instituted a common law action to recover the balance due on the promissory note involved after foreclosure. The defendant alleged that the sum bid was an arbitrary amount and did not represent its fair and equitable value. The Supreme Court noted that the question on appeal was whether or not the defendant was bound by the sale price of the property under the facts in that case. After observing that the defendant had notice of the foreclosure sale, that he had not exercised his right to have been present to enhance the value of the property and to resist confirmation of its sale and that there was no charge of illegality otherwise, the Court said:
"Under such circumstances, the decided weight of authority in this country supports the rule that the price bid at the foreclosure sale, especially when such sale is duly confirmed by the judge, is as between these parties, the conclusive test of the value of the property sold. If the judge is of the opinion that the amount bid at the sale was inadequate and inequitably less than the real value of the property, he should not confirm such sale, but order a resale of the property." (Italics ours.)
It should be clearly noted that the mortgage foreclosure procedure in Penn Mutual was not the same as that in the case involved. Section 702.02, Florida Statutes, F.S.A., did not exist at the time of Penn Mutual. The procedure followed in Penn Mutual required confirmation of the sale by the Court. Under the statute's alternative method, confirmation is automatic if objection to the sale is not timely made. This point of departure, together with the absence of any language specifically reversing Kurkjian v. Fish Carburetor Corporation, Fla.App., 145 So.2d 523, and Jonas v. Bar-Jam Corp., Fla.App., 170 So.2d 479, and the other district court decisions on the point which is posed for adjudication in this case, in the light of the realities and practical considerations bearing upon the matter, leads us to the inescapable conclusion that the Supreme Court did not intend to reverse and did not reverse the said decisions. This conclusion is buttressed in reason, we believe, by the fact that the observations, which apparently induced the Court's opinion in Penn Mutual, that the mortgagor could have appeared at the sale to enhance the value of the property, presumably by bidding, and then could have resisted confirmation of the sale, gainsay reality if not possibility under the present status of the *230 law. If the mortgagor could pay the mortgage, there presumably would be no reason for foreclosure in the first place, and seldom will the defaulting party be in a better position to pay the mortgage obligation at the sale. He could expose himself to embarrassment and trouble and subject others to unnecessary expense by irresponsible and sham bidding designed to enhance the sale value of the property. Moreover, we can think of no persuasively sound reason why he should be called upon to perform the useless act of unsuccessfully objecting to a sale which is legally binding in all respects. It is now a firmly established rule that a judicial sale regularly made will not be refused confirmation on account of inadequacy of price alone unless it is so gross as to shock the Court's conscience and raise a presumption of fraud, unfairness or mistake. (Certain Lands, etc. v. City of Coronado Beach, 128 Fla. 884, 175 So. 774; Mitchell v. Mason, 75 Fla. 679, 79 So. 163, 16 RCL 95) He is, in reality, in substantially the same position as the mortgagor who is foreclosed after constructive service and is then made a defendant in a suit at law to recover the balance due on the promissory note involved. See Matz v. O'Connell, Fla.App., 155 So.2d 705, wherein it was held that evidence of value in such a suit is admissible notwithstanding the bid price.
We believe that the well reasoned decisions of the district courts relied upon by the appellant are and should be the law of Florida. We find no clear intention, expressly or by manifest implication, of the Supreme Court in either Penn Mutual or Belmont which would change the interpretation placed upon Section 702.02, Florida Statutes, F.S.A., by the First District Court of Appeal in the Kurkjian case, supra. We also observe that full sessions of the Florida legislature, including at least one regular session, have passed since the interpretation of the Kurkjian case was placed on record. No attempt to change the law, as expressed in Kurkjian, has been made by the legislature and we are of the opinion that it could not, even intentionally, deprive an equity court of its power and responsibility to prevent unfairness, injustice and fraud. An interpretation that would permit the statutory provision to thus restrict the basic and inherent nature of the Court's function should and would render the legislation invalid.
Finally, we are convinced that a judicial holding that the bid price at the foreclosure sale conclusively establishes the market value of the property for purposes of deficiency decree would expose the foreclosure procedure to shocking and pernicious inequities in many cases. It is common knowledge that frequently mortgagees do not bid anywhere near the market value of the property or the amount of the obligation at foreclosure sales.
While the difference between the bid at the sale in this case and the amount specified in the testimony offered by the defendants is not large in terms of proportion, it amounts to more than $185,000 and that, it seems to us, is a rather substantial amount of money to expose to unjust loss.
The ruling of the trial court is, therefore, reversed and remanded for further proceedings in conformity with this opinion. It is so ordered.
LILES, C.J., and PIERCE, J., concur.