United States Court of Appeals,

Eleventh Circuit.

No. 94-3569.

In re Richard SIX, Debtor.

OB/GYN SOLUTIONS, L.C., Plaintiff-Appellant,

v.

Richard SIX, Defendant-Appellee.

April 15, 1996.

Appeals from the United States District Court for the Middle District of Florida.

Before BIRCH, Circuit Judge, and CLARK and WEIS[*], Senior Circuit Judges.

WEIS, Senior Circuit Judge:

In this case, the holder of a note secured by a mortgage filed a claim in bankruptcy giving credit for the amount bid at a judicial sale in the state foreclosure proceeding. Because the claim put the amount of the credit at issue, we conclude that the creditor cannot invoke *res judicata* to bar the debtor-guarantor from showing that the value of the property was more than the bid price. Therefore, we affirm the district court's order sustaining the bankruptcy judge's finding that the property value exceeded the amount of the claim, which he accordingly denied.

Debtor, Dr. Richard R. Six, was a guarantor on a note secured by a mortgage on realty located in Brandon, Florida. After default, the mortgagee, Fort Brooke Savings Bank, began foreclosure proceedings in the Florida circuit court. On December 14, 1990, the state court entered a final judgment of foreclosure determining that the amount of the lien was $1,838,196.02. The bank bid in the property for $1,200,000 at a judicial sale on January 17, 1991.

In the same case, the bank obtained a judgment on February 12, 1991 for $1,838,196.02 on the note. The money judgment did not reflect an offset for the judicial sale price or any estimate of the fair market value of the real estate. On July 12, 1991, the state court issued a certificate of title

---

[*]Honorable Joseph F. Weis, Jr., Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

conveying the real property to the bank. On May 22, 1992, the bank assigned the money judgment of February 12, 1991 to Ob/Gyn Solutions, L.C., and on that same date conveyed the real estate to Ob/Gyn for $1,540,000.

At the direction of Ob/Gyn, on June 18, 1992 the sheriff levied on shares of stock in "Drs. Sheer, Ahearn & Associates, P.A." owned by Dr. Six. Four days later, Dr. Six filed a motion in state court to satisfy, or obtain relief from, the February 1991 judgment. He alleged, *inter alia,* that no deficiency decree had been obtained after the foreclosure and that the value of the real estate exceeded the amount of the judgment. The state court stayed the execution on Dr. Six's stock and directed the sheriff to hold the certificates pending further order. In March 1993, Ob/Gyn filed a motion in the state court for summary judgment.

Dr. Six filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on April 28, 1993, thus staying the state court proceeding. Ob/Gyn submitted a Proof of Claim in the bankruptcy court for the amount of the February 1991 judgment plus interest, crediting against that, however, the bid price of $1,200,000, leaving a net claim of $869,653.53. Ob/Gyn asserted that $250,000 of its claim was secured by the lien on Dr. Six's stock.

In ruling on an objection to the claim, the bankruptcy judge concluded that Dr. Six should have raised his argument for an offset in the state court proceeding leading to the entry of the February 1991 judgment. Having failed to do so, he was subject to the defense of *res judicata.* However, the bankruptcy judge determined that under Florida law, *res judicata* is not rigidly enforced if its application would result in manifest injustice. He decided to invoke the exception because, otherwise, Ob/Gyn would obtain a windfall.

The bankruptcy judge then ruled that the Ob/Gyn claim should credit Dr. Six with the fair market value of the real estate at the time of the judicial sale rather than the bid price. After a hearing, the value was found to be more than $1,900,000, a sum in excess of the February 1991 judgment. Consequently, the bankruptcy judge disallowed Ob/Gyn's claim in its entirety.

On appeal, the district court affirmed, agreeing that under Florida law, *res judicata* would not be applicable because it would be inequitable under the circumstances. Citing *Pepper v. Litton,*

308 U.S. 295, 305, 60 S.Ct. 238, 244-45, 84 L.Ed. 281 (1939), the court also affirmed on the ground that a bankruptcy judge has broad equitable power to inquire into the validity of any claim, even one that had been reduced to judgment. Ob/Gyn has appealed.

## I.

## APPELLATE JURISDICTION

We first address the question of jurisdiction. District courts may review interlocutory orders of a bankruptcy judge, but Courts of Appeals have jurisdiction only of final orders. *In re Delta Resources, Inc.,* 54 F.3d 722, 726 (11th Cir.1995). The matter before us presents a combination of the two.

In the bankruptcy proceedings, the bankruptcy judge sustained Dr. Six's challenge to Ob/Gyn's claim and disallowed it. That was a final order and was properly appealed to the district court.

Dr. Six also filed an adversary proceeding, seeking a determination that Ob/Gyn had no lien on the stock because it did not have a valid claim. Also included in the complaint was a count requesting avoidance of potential liens on the stock that might be asserted by third parties holding other judgments against Dr. Six.

On May 2, 1994, the bankruptcy judge entered an order denying Ob/Gyn's motion for summary judgment in the adversary proceeding. On August 2, 1994, also in the adversary proceeding, the bankruptcy judge granted Dr. Six's motion for partial summary judgment, finding that Ob/Gyn had no lien on the stock and ordering that it be returned to Dr. Six. The order denying Ob/Gyn's motion for summary judgment is interlocutory and not final. Similarly, the grant of summary judgment to Dr. Six did not dispose of all counts of his complaint, although the remaining count, which addressed the possibility of liens by other judgment creditors, was also dependent on the validity of the Ob/Gyn claim. When Ob/Gyn's claim was repudiated, those creditors then had potential opportunities to become secured creditors.

The district court granted permission to appeal these interlocutory orders and then consolidated them for all purposes with the appeal from the final order in the underlying bankruptcy

proceeding disallowing Ob/Gyn's claim. The various orders overlap because the principal and dispositive issue in each is the same—the validity of the claim asserted by Ob/Gyn. The difficulty here is that the district court consolidated the one final order with the two interlocutory ones, and the parties have failed to properly distinguish these three separate appeals to the district court.

*In re F.D.R. Hickory House, Inc.,* 60 F.3d 724 (11th Cir.1995), discussed the more flexible standard of finality in appeals of bankruptcy orders. There, we pointed out that we would review "even an order of marginal finality ... if the question presented is fundamental to further conduct of the case." *Id.* at 727 (quoting *Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.,* 890 F.2d 371, 376 (11th Cir.1989)).

The interlocutory order denying Ob/Gyn's motion for summary judgment may be reviewed along with the final order because it is merely duplicative and, for all practical purposes, simply a restatement of the same issue. The order unquestionably is fundamental to further conduct of the case because of the size of the claim in relation to the others asserted in the bankruptcy proceeding.

The interlocutory order granting summary judgment to Dr. Six is similarly a repeat of the dispositive issue. Although it may be subject to the restrictions of Fed.R.Civ.P. 54(b), this order also stated that the stock was to be turned over to Dr. Six. As we observed in *In re F.D.R. Hickory House,* an exception to strict finality occurs when the interlocutory order "decides the right to the property in contest, and directs it to be delivered up by the defendant...." *Id.* at 726 (quoting *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 204, 12 L.Ed. 404 (1848)).

We conclude, therefore, that we have jurisdiction over this appeal from the consolidated case because it contains one final order and two interlocutory orders that meet the relaxed standards of finality in bankruptcy appeals in this Court.

II.

OB/GYN'S CLAIM

The parties and the bankruptcy judge focused their attention on the effect of *res judicata* on Dr. Six's challenge to Ob/Gyn's claim. When *res judicata* is invoked to give preclusive effect to a state court judgment, a bankruptcy judge must apply state law. *Allen v. McCurry,* 449 U.S. 90, 96,

101 S.Ct. 411, 415-16, 66 L.Ed.2d 308 (1980); *In re St. Laurent,* 991 F.2d 672, 676 (11th Cir.1993); *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987). *Res judicata* precludes reexamination not only of liability for a debt, but also its amount as well. Moreover, the bar applies both to issues actually adjudicated and to those that could have been litigated. *Universal Constr. Co. v. City of Ft. Lauderdale,* 68 So.2d 366, 370 (Fla.1953).

In this appeal, Ob/Gyn relies on the bankruptcy judge's reasoning that because Dr. Six failed to apply for an offset in the February 1991 proceeding, *res judicata* bars him from raising that issue in bankruptcy. However, Ob/Gyn's claim filed in the bankruptcy proceeding conceded that a credit for the bid price at the judicial sale should have been allowed against the February 1991 judgment.

Furthermore, in its brief to this Court, Ob/Gyn candidly admits that entering a judgment in the state court for the full amount of the debt in February 1991, "without offsetting the judicial sale price of $1,200,000 ... was clearly erroneous." Ob/Gyn also concedes that the amount of the offset should have been the higher of the fair market value as of the date of sale or the bid price. *Liberty Bus. Credit Corp. v. Schaffer/Dunadry,* 589 So.2d 451, 452 (Fla.Dist.Ct.App.1991). Despite these flaws in the state proceedings, Ob/Gyn insists that we may not look behind the judgment, citing *Baptiste v. Commissioner,* 29 F.3d 1533, 1540 (11th Cir.1994), and *Kelleran,* 825 F.2d at 694.

A brief review of Florida law on mortgage foreclosure is helpful to understand the contentions of the parties. A creditor holding a note secured by a mortgage may bring both a foreclosure proceeding and, in the same case, an action at law on the note for "damages." *Klondike, Inc. v. Blair,* 211 So.2d 41, 43 (Fla.Dist.Ct.App.1968). In the absence of satisfaction, the creditor may obtain a judgment on each count. *Gottschamer v. August, Thompson, Sherr, Clark & Shafer, P.C.,* 438 So.2d 408, 409 (Fla.Dist.Ct.App.1983). If the debt is not satisfied by a judicial sale, the court, at the request of the creditor, is authorized to enter a deficiency decree for the balance of the debt. *Norwest Bank Owatonna, N.A. v. Millard,* 522 So.2d 546, 547 (Fla.Dist.Ct.App.1988).

The foreclosure sale price does not conclusively establish the value of the property, even if no objection to the sale has been made. *Bobby Jones Garden Apts., Inc. v. Connecticut Mut. Life Ins. Co.,* 202 So.2d 226, 227 (Fla.Dist.Ct.App.1967). For deficiency judgment purposes, however,

Florida law requires a two-step analysis, first determining the difference between the outstanding debt and fair market value of the foreclosed property, and second, ascertaining equitable facts that may further reduce the deficiency. *FDIC v. Morley,* 915 F.2d 1517, 1520-21 (11th Cir.1990). The burden of proving that the foreclosed assets did not satisfy the indebtedness is upon the creditor. *Thunderbird v. Great Am. Ins. Co.,* 566 So.2d 1296, 1298 (Fla.Dist.Ct.Ap.1990).

There is a presumption under Florida law that the foreclosure bid price equals the property's fair market value. That presumption, however, is rebuttable and is designed to allocate the burden of producing evidence, rather than conclusively establishing value. *Liberty Bus. Credit,* 589 So.2d at 452. Thus, Ob/Gyn cannot point to any state court judgment that preclusively determines the amount of a deficiency.

The parties' focus on *res judicata* overlooks the posture of the proceeding in the bankruptcy court. In that forum, Dr. Six did not challenge the fact of the February 1991 judgment, but rather contended that the amount of Ob/Gyn's offset was insufficient.

Ob/Gyn relied on *res judicata* to prevent Dr. Six from establishing the credit due him, but Fort Brooke Bank, Ob/Gyn's assignor, could—and should—have resolved the amount of the offset in the February 1991 proceeding. Essentially, what Ob/Gyn sought in the bankruptcy court was the amount a deficiency judgment could have established in the state court. But it was the bank's failure to pursue available procedures in the February 1991 case that led to the lack of a proper deficiency adjudication.

In sum, Ob/Gyn, through the inaction of its assignor, is guilty of the same shortcoming that it attributes to Dr. Six. Once the offset was placed at issue in bankruptcy, the court properly invoked equitable principles to determine whether Dr. Six should be permitted to produce evidence to establish the market value of the property at the relevant time. *See In re T & B Gen. Contracting, Inc.,* 833 F.2d 1455, 1461 (11th Cir.1987) (estoppel is an equitable doctrine that prevents a party from raising a claim when his conduct with respect to that claim is contrary to his position); *In re Ranch House of Orange-Brevard, Inc.,* 773 F.2d 1166, 1169 (11th Cir.1985) (Court unwilling to limit bankruptcy court's power to employ equitable doctrines). In less elegantly jurisprudential

terms, Ob/Gyn is bound by the maxim, "What's sauce for the goose is sauce for the gander."

After noting Ob/Gyn's concession that a credit was due, the bankruptcy judge wrote in his opinion: "Based upon the foregoing, this Court is satisfied that equity mandates the allowance of a credit against the Judgment." By making the previously unadjudicated offset part of its claim, Ob/Gyn submitted the proper valuation of the real estate to the bankruptcy judge to be weighed in his determination of whether all, part, or none of the claim should be allowed.[1]

Ob/Gyn does not raise any challenge to the bankruptcy judge's valuation of the property as being in excess of $1,900,000. Indeed, to prevail, Ob/Gyn must show that the finding was clearly erroneous, a burden not easily met on the record in this case.

In sum, the extent of the offset applicable to the February 1991 judgment against Dr. Six was a matter that had to be resolved by the bankruptcy judge in determining the enforceability and valuation of the claim submitted by Ob/Gyn. A bankruptcy judge has broad equitable powers to inquire into the validity of a claim. *Pepper,* 308 U.S. at 304-05, 60 S.Ct. at 244-45. In the absence of constraint imposed by *res judicata,* the determination by the bankruptcy judge was well within the scope of his authority. We find no error in his ruling that the fair market value of the property exceeded the amount of the claim, and therefore, that Ob/Gyn's claim was disallowed.

In addition to asserting *res judicata,* Ob/Gyn also contends that Dr. Six would not have prevailed in his allegedly untimely collateral attack on the judgment in the state court proceeding that was stayed after the bankruptcy petition was filed. Having determined that the offset against the claim was properly determined, we need not address this theory.

Accordingly, the judgment of the district court will be AFFIRMED.

CLARK, Senior Circuit Judge, specially concurring:

I concur in the result and all of the fine opinion authored by Judge Weis, except the inclusion of note one. It matters to me that OB/GYN conceded that a credit was due.

I am troubled generally by this type of dispute being resolved by the Bankruptcy Courts. The

_____

[1]Our decision to follow this approach is not in any way an indication that the ultimate result would differ had Ob/Gyn not raised the offset issue in its claim.

issue was pending in the state court because Dr. Six on June 22, 1992, had filed a motion in state court to satisfy, or obtain relief from the February 1991 judgment—the issue later decided by the Bankruptcy Court. Dr. Six's brief in state court argued that the December 14, 1990, foreclosure judgment and the February 12, 1991, final judgment in favor of the bank for $1,838,196.02 had been satisfied by the foreclosure sale. The state court granted Dr. Six's motion to stay execution on the stock.

In March, 1993, OB/GYN moved in state court for summary judgment on the pending motions. Dr. Six then filed his Chapter 11 bankruptcy petition. Had the state court been given the opportunity, it would have decided the very issue decided below by the Bankruptcy Court. That could have happened if the Bankruptcy Court had abstained as permitted by 28 U.S.C. § 1334(c)(1) or (2).

In my view this is clearly a case where the federal court should have abstained, although I acknowledge abstention is the exception, not the rule. *See* 28 U.S.C. § 1334(c). In *Colorado River Water Conser. Dist. v. United States,* 424 U.S. 800, 818-20, 96 S.Ct. 1236, 1246-47, 47 L.Ed.2d 483 (1976), the Court held there can be good reasons for abstaining, such as existing state court proceedings between the same parties having the same issue, the inconvenience of the federal forum, the avoidance of piecemeal litigation, the source of law being state rather than federal, and whether the state law can adequately protect the party seeking federal jurisdiction.

There is one additional reason why I think this particular case should have been handled by the Florida State Circuit Court. I am troubled by a case where a mortgage was foreclosed against property, the debt was $1,838,196.02, the bid by the creditor was $1,200,000, and the state court entered a judgment for the creditor against the debtor in the sum of $1,838,196.02.

It is obvious that the state court judge who signed this judgment was misled.[1] The first lesson a young lawyer learns is that judges are busy people, that the judges rely on lawyers, and one never sends a judge an order or judgment that is incorrect. One does not even have to be a lawyer

---

[1]The lawyers appearing for the parties in this court are not the lawyers who handled the case in state court.

to know that a deficiency judgment can only be for the amount of debt less the amount of the bid at the foreclosure sale. If the Bankruptcy Court had abstained in this case and referred the parties back to the state court, an appropriate reckoning could have been had.

Although I concur in the result and the opinion, I am troubled by both the failure of the Bankruptcy Court to abstain and the lawyering in the state court proceeding.