576 So.2d 859 (1991)
Beverly Cromer MARKS, Appellant,
v.
Larry S. MARKS, Appellee.
No. 89-2717.
District Court of Appeal of Florida, Third District.
March 19, 1991.
*860 Hunter & Schultz, and Charlton Lee Hunter and Linwood Anderson, for appellant.
Greene & Marks and Cynthia L. Greene, for appellee.
Before JORGENSON, COPE and GODERICH, JJ.
PER CURIAM.
Beverly Cromer Marks appeals a final judgment of the trial court, following a bench trial, terminating her permanent periodic alimony award. We reverse.
The parties were divorced in 1980 after an 18 year marriage. The wife received $1,500 per month in permanent periodic alimony, which was reduced to $1050 per month in January, 1988 upon the husband's petition for modification. In April, 1989, the husband again moved to terminate or reduce the wife's alimony asserting he no longer had the ability to pay because of the severe financial difficulties he was experiencing. He further asserted that because the wife was the owner of two successful restaurants, she was no longer in need of permanent periodic alimony.
First, we find that the trial court erred in terminating the wife's alimony because the husband made no showing that the change in his financial situation was permanent. See Waldman v. Waldman, 520 So.2d 87, 89 (Fla. 3d DCA) ("Modification based upon a change of circumstances requires a showing that the change is sufficient, material, involuntary, and permanent in nature."), review denied 531 So.2d 169 (Fla. 1988). The husband submitted evidence to show that one of his construction firms, Centennial Construction Company, had suffered dramatic financial reverses and was near bankruptcy. This alone is not a sufficient showing to warrant a termination of permanent periodic alimony. See Henderson v. Henderson, 463 So.2d 485, 486 (Fla. 2d DCA 1985) ("It may be that when the husband's finances become *861 stabilized, through termination of the bankruptcy reorganization or otherwise, he will be able to prove that any post-judgment financial misfortune is of such a material, involuntary, and permanent nature as would entitle him to relief."). That a second company owned by the husband, Larry S. Marks Construction, was completing smaller construction jobs and was providing an income, albeit a smaller one, is further evidence that his current financial problems do not rise to the level necessary to warrant a termination of periodic alimony. We therefore reverse the order under review.
Because the trial court terminated alimony it did not reach the husband's alternative request for modification. This reversal is without prejudice to the husband's right to proceed on the motion for modification. We do not intimate any view on the merits of that request.[*]
Because the husband may elect to proceed on the petition for modification after remand, we reach the wife's remaining points on appeal. Both points have merit.
At the hearing below the wife sought to introduce a loan application submitted to a bank by the husband and his current wife just two months before the trial was held. The husband's assets were listed on both the loan application and the financial affidavit filed by him in support of his petition for modification, except the assets on the loan application were given a significantly higher value than on the financial affidavit. The husband argued that the application should not be admitted because it was a joint application which included his wife's personal assets. The trial court refused to admit the application into evidence though she did allow the wife to question the husband about the various discrepancies.
This loan application was clearly relevant to the issue of the husband's financial position and whether there existed such a permanent change of his circumstances that the wife's alimony should be terminated. The evidence was relevant to the issue of the ability to pay and should have been admitted. See Toback v. Toback, 483 So.2d 882 (Fla. 3d DCA 1986).
The wife's remaining point on appeal also has merit. The wife's defense to the husband's petition for modification of alimony was that she had a negative net worth and a net income loss, i.e., she had the requisite need. To counter the evidence presented by the wife, the husband offered the testimony of an expert regarding the estimated business income of one of the wife's restaurants. The expert, a professor of hotel management at Florida International University who was also a restaurant owner, testified that he and three associates ate a total of 15 meals at the restaurant on 12 occasions over a two week period. He testified that the basic procedure was to go to the restaurant, count the number of people there, look at the menu and the daily specials and try to ascertain what was being ordered. The expert relied in part on the data he collected personally and in part on his associates' data and notes to arrive at an opinion as to the average expenditure and the average number of customers per day. Based on these estimates, he opined that the wife was grossing at least $40,000, and earning at least $20,000 to $25,000 per year more than she was reporting on her tax returns.
At trial the expert presented his findings without presenting the underlying data, as the Evidence Code permits. See § 90.705(1), Fla. Stat. (1989). The Code provides, however, that "[o]n cross-examination he [the expert] shall be required to specify the facts or data." Id. Because the husband's expert did not bring the underlying data on the survey performed by himself and his associates, he was not able to present that information on cross-examination. "[T]he opinion is inadmissible if the party offering the opinion cannot establish the adequacy of the underlying facts." C. Ehrhardt, Florida Evidence § 705.1, at 420 (2d ed. 1984) (footnote omitted); see *862 also Husky Industries, Inc. v. Black, 434 So.2d 988, 992 (Fla. 4th DCA 1983). The data should have been introduced, failing which the opinion should have been excluded.
The wife also contends that the expert opinion should have been excluded because it was based on hearsay, i.e., the data collected by the expert's subordinates, who did not testify at trial. That position is without merit. In the first place, the expert performed part of the work personally. Moreover, even if the expert had relied entirely on his subordinates' data, that would not render the opinion inadmissible so long as the Evidence Code criteria are met. Section 90.704, Florida Statutes (1989), provides:
The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, him at or before the trial. If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.
See also Sponsor's Note to § 90.704, West's Fla. Stat.Annot. at 216-17; C. Ehrhardt, Florida Evidence § 704.1.
Equally misplaced is the wife's reliance on section 90.956, Florida Statutes (1989). The requirements pertaining to expert testimony are those found in sections 90.702-.705, Florida Statutes. The proponent of expert testimony is not obliged to comply with section 90.956 when presenting the data relied on by the expert, although in some cases the proponent of the expert testimony may find it convenient to use that procedure. The fact that the husband did not offer a summary pursuant to section 90.956 was not a basis for excluding the expert testimony.
The order terminating alimony is reversed and the case is remanded for further proceedings consistent herewith.
NOTES
[*] The husband also requested, as an alternative, a temporary abatement of the obligation to pay. That request should likewise be addressed in the first instance to the trial court and again, we intimate no view on the merits of that request.