**In re Richard R. SIX, Debtor.**

**Richard R. SIX, Plaintiff,**

v.

**Cal HENDERSON, Sheriff of Hillsborough County, OB/GYN Solutions, L.C. and Fort Brooke Savings Bank f/k/a Fort Brooke Savings & Loan Association, Inc., Defendants.**

**Bankruptcy No. 93–4711–8P1.
Adversary No. 93–298.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 2, 1994.

Constance McCaughey, Tampa, FL, for Plaintiff.

David J. Farash, Tampa, FL, for Cal Henderson.

Nancy G. Farage, Tampa, FL, for Fort Brooke Bank.

Lee Damsker, Tampa, FL, for OB/GYN Solutions, Inc.

### ORDER ON MOTION FOR SUMMARY JUDGMENT and ORDER ON OBJECTION TO CLAIM # 12 OF OB/ GYN SOLUTIONS, L.C.

ALEXANDER L. PASKAY, Chief Judge.

THIS is a yet-to-be confirmed Chapter 11 case and the matter under consideration is a Motion for Summary Judgment filed by OB/ GYN Solutions, L.C. (OB/GYN), one of the defendants named in this Adversary Pro-

ceeding commenced by Richard R. Six (Debtor), and a Motion for Summary Judgment filed by Fort Brooke Bank (Fort Brooke), another defendant in the same adversary proceeding. This court will also consider and enter an Order on the Debtor's Objection to (OB/GYN's) Claim # 12, since the resolution of both involve the exact same issues.

OB/GYN's Motion for Summary Judgment is directed to the claims set forth in Counts I, II and III of the Debtor's Second Amended Complaint. Court I seeks a determination of the extent and validity of an alleged lien encumbering stock owned by him in a professional association known as Drs. Shear, Ahearn & Associates, P.A. (P.A. Stock). Count II of the Debtor's complaint seeks a declaration that OB/GYN in fact does not have a lien on the P.A. Stock, and Count III seeks an order directing the Sheriff and/or OB/GYN to turnover the P .A. Stock to the Debtor pursuant to § 542 of the Bankruptcy Code.

The alleged lien is part and parcel of OB/GYN's claim to which the Debtor also objects. The claim and the lien are based on a default deficiency judgment obtained by Fort Brooke Bank (Fort Brooke) against the Debtor and then assigned to OB/GYN. While the judgment was for $1,838,196.02, OB/GYN asserted a bifurcated claim for only $869,653.50, of which $569,653.53 was filed as unsecured and $250,000 as secured by shares of the aforementioned P.A. Stock.

The Debtor contends that he is not indebted in any amount to OB/GYN. In his Objection to Claim, the Debtor asserts that OB/GYN's claim does not give credit to the fair market value of the collateral, which Fort Brooke purchased at the foreclosure sale for $1,200,000 and sold to OB/GYN. The Debtor contends that the claim of OB/GYN should be credited not for the purchase price paid by Fort Brooke at the foreclosure sale, but the market value of the property, which, according to the Debtor, was equal to or greater than the deficiency judgment obtained by Fort Brooke and assigned to OB/GYN. OB/GYN contends that the Debtor's attempt to alter its claim is nothing more than an untimely collateral attack on the state court judgment, and not sustainable as

a matter of law therefore it is entitled to a Summary Judgment in its favor.

In due course the matter was set for hearing and the Court, having reviewed the record and heard argument of counsel, finds the following facts, which are relevant to resolution of this controversy:

On January 23, 1985, Building Bloc Associates (Building Bloc), a Florida general partnership, executed and delivered to Fort Brooke a promissory note in the amount of $1,750,000. The note was secured by a mortgage on certain commercial real property located in Brandon, Hillsborough County, Florida. The mortgage was modified by virtue of an Agreement for Assumption of Note and Mortgage dated November 6, 1987, which provided that the note and mortgage would be assumed by Tri Ameri–Can Investments, a Florida general partnership, of which the Debtor was a general partner. The Debtor personally guaranteed the note. When the note fell into default, Fort Brooke filed a foreclosure action on August 2, 1990 in the Circuit Court of Hillsborough County, naming the Debtor and others as defendants. On December 14, 1990, the Circuit Court entered its Final Judgment of Foreclosure, determining that Fort Brooke had a valid lien on the property in the amount of $1,838,-196.02. On January 17, 1991, a sale was held pursuant to the December 14, 1990 final judgment and, at that sale, Fort Brooke bid on and purchased the property for $1,200,-000. On the date of the sale, the amount of the judgment, including post-judgment interest, was $1,858,743.53. In due course the Clerk issued a Certificate of Title to Fort Brooke conveying the legal ownership of the subject property.

On February 12, 1991, Fort Brooke obtained a Final Judgment for damages against the partnership, Tri Ameri–Can Investments, and its partners, the Debtor and others, in the amount of $1,838,196.02, plus interest from December 14, 1990. The judgment did not reflect a credit for the sale price or for any estimate of the fair market value of the property. Fort Brooke docketed its Writ of Execution with the Sheriff of Hillsborough County on April 10, 1991.

On May 22, 1992, Fort Brooke assigned the February 12, 1991 judgment and the execution to OB/GYN. As part of this transaction, Fort Brooke conveyed the subject property to OB/GYN. Upon direction of OB/GYN, as assignee of the judgment, the Sheriff levied on the stock owned by the Debtor in the Professional Association on June 18, 1992. On June 22, 1992 the Debtor filed his Motion to Satisfy Judgment and/or for Relief from Judgment in the Circuit Court. On July 10, 1992, the Circuit Court entered an order staying the execution and directing the Sheriff to hold the stock until further order of the court. On March 16, 1993, OB/GYN filed its Motion for Summary Judgment in the Circuit Court, directed to the Debtor's Motion to Satisfy Judgment and/or Relief from Judgment. The motion was scheduled for hearing on April 29, 1993. However, before the motion could be heard, the Debtor filed his Voluntary Petition for Relief under Chapter 11 on April 28, 1993 which, of course, stopped all further proceedings in the State Court action because of the intervention of the automatic stay imposed by the Bankruptcy Code.

OB/GYN asserts in its Motion for Summary Judgment that this record clearly establishes that there are no genuine issues of material facts and it is entitled to judgment in its favor as a matter of law dismissing all claims against it as set forth in the Second Amended Complaint. In support of this proposition, OB/GYN asserts that the Debtor is attempting to attack the deficiency judgment, and the Debtor is precluded from challenging the amount of the judgment by the doctrine of res judicata and/or because an attack by virtue of Fla.R.Civ.P. 1.540(b) and/or F.R.Civ.P. 60(b), as adopted by F.R.B.P. 9024 is time-barred.

The Debtor, however, contends that he is not seeking relief from the judgment, and in fact, admits that the judgment properly represents his liability. Instead, he contends that the liability was fully satisfied, or will be fully satisfied, if the Debtor is given credit for the fair market value of the foreclosed property which, according to the Debtor, is far greater than the amount paid by Fort Brooke at the foreclosure sale. In other words, the Debtor points out and urges that he is not seeking relief from the judgment at all; the proof of claim filed by OB/GYN, which gives a credit to the Debtor for the amount of Fort Brooke's purchase price, should have given a credit in the amount of the fair market value of the property. In support of his position the Debtor relies on Fla.Stat. § 701.04 which provides, in pertinent part, as follows:

> Whenever the amount of money due on any mortgage, lien or judgment shall be fully paid ... the mortgagee, creditor ... or the attorney of record in the case of a judgment ... shall execute in writing an instrument acknowledging satisfaction of said mortgage, lien or judgment and have the same acknowledged, or proven, and duly entered of record.

> In the case of a civil action arising out of the provisions of this section, the prevailing party shall be entitled to attorneys' fees and costs.

This Statute has a four year statute of limitations, see Fla.Stat. § 95.11, and, therefore if one accepts the argument of the Debtor, the relief sought is not time barred at all.

Concededly, it is difficult to discern the difference between attacking and reducing the final deficiency judgment by according the credit, and contending that the correct final judgment has been fully satisfied, albeit not by payment but by the fair market value of the foreclosed property.

Fla.R.Civ.P. 1.540(b) or, in the alternative, F.R.Civ.P. 60(b) as adopted by F.R.B.P. 9024 are virtually identical, and provide as follows:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons:

> (5) the judgment has been satisfied, ... or it is no longer equitable that the judgment should have prospective application.

> The motion shall be made within a reasonable time, and for reasons, (1), (2), and (3), not more than 1 year after the judgment ... was entered or taken.

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment ...

It is without dispute that the Debtor filed his Motion in the State Court on June 22, 1992, or approximately 16 months after the entry of the judgment. It is equally true, however, that the Debtor did not learn about the entry of the February 12, 1991 judgment until June 18, 1992, when the Sheriff levied on his stock in the Professional Association (Deposition of Richard Six, Pages 25, 26) even though, of course, he knew of the December 14, 1990 foreclosure judgment but was never advised by counsel of the in personam deficiency money judgment. This sixteen month delay, while seemingly long, did not visit any prejudice to OB/GYN since it did not acquire the judgment in question until May 22, 1992, or one month prior to the Motion by the Debtor seeking an order of satisfaction of the judgment. (Debtor's Exhibit No. 4).

Lastly, the debtor-in-possession on behalf of the estate did act with diligence and sought a determination promptly that OB/GYN has no valid allowable claim by filing his objection to the claim on September 14, 1993, or approximately four months after the commencement of this Chapter 11 case.

■ Contrary to the contention of the Debtor, the doctrine of res judicata would bar the relief sought because the doctrine prohibits re-litigation not only of issues actually tried, but those which **could have been** tried and determined. *In re Jaquis,* 131 B.R. 1004 (Bankr.M.D.Fla.1991). In the last analysis this Court is satisfied that whether or not the Debtor is entitled to a credit against the deficiency judgment is a question which should have been resolved in the State Court and, since it was not, the doctrine of res judicata applies. This is so because the doctrine of res judicata would bar relief sought and prohibit to re-litigate not only the issues actually tried but those which should have been tried and determined. Clearly, the issue of how much credit from the completed foreclosure sale should have been applied to the deficiency judgment should have been addressed at the hearing fixing the amount of the deficiency judgment. Therefore, the Debtor's right to a credit is a foregone conclusion and can no longer be raised.

■ The Debtor contends, however, that there is an exception to the application of the doctrine of res judicata and the Courts do not apply the same if to do so would work an injustice. In support of this proposition the Debtor cites the case of *Universal Const. Co. v. City of Ft. Lauderdale,* 68 So.2d 366 (Fla. 1953), where the Supreme Court permitted a contractor to sue the city upon quantum meruit, even though the same cause of action had been involved in prior litigation between the parties and held:

> The basic principle upon which the doctrine of res judicata rests is that there should be an end to litigation and that in the interest of the State every justiciable controversy should be settled in one action in order that the courts and the parties will not be bothered for the same cause by interminable litigation ... Nevertheless, when a choice must be made we apprehend that the State, as well as the courts, is *more interested in the fair and proper administration of justice than in rigidly applying a fiction of the law designed to terminate litigation.* (emphasis added)

In the same case the Court held:

> Stare decisis and res judicata are perfectly sound doctrines, approved by this court, but they are governed by well settled principles and when factual situations arise that to apply them would defeat justice we will apply a different rule.

Based on the foregoing the question is whether the Court should decline to apply the doctrine and consider the Debtor's right to receive credit for the fair market value of the property against the judgment. In considering this issue, it must be noted that to allow OB/GYN to assert the full amount of the personal judgment, giving no recognition to the value of property received would violate the principles of equity, and would allow OB/GYN to obtain a windfall by collecting the full amount of the deficiency Judgment even though it is without dispute that Fort Brooke purchased the property for $1,200,-000.00 at the foreclosure sale and the market value of the property claimed to by the Debtor is in excess of the amount still due and owing on the Judgment. It also should be noted that OB/GYN, in filing its proof of

claim in this case, filed a proof of claim in the amount of $869,653.50 thus apparently crediting the bid price of Fort Brooke against the full amount of the deficiency Judgment, thereby conceding that the Debtor is in fact entitled at least to this credit. Based upon the foregoing, this Court is satisfied that equity mandates the allowance of a credit against the Judgment.

■ This leaves for consideration a determination of the amount of the credit, which, in turn, involves a determination of the value of the property. On the issue of the valuation of the subject property, this court finds that the credible, overwhelming evidence establishes that the value of the property which was foreclosed is at least $1,900,000.00. To make this determination, the Court heard testimony by two experts, one hired by the Debtor and one hired by OB/GYN. The expert testifying on behalf of the Debtor used the traditionally accepted method to appraise the commercial property and, based on the fact that it is a single-occupancy medical facility located in a medical node, the appraiser used as comparatives other medical facilities located in medical nodes around Brandon and Hillsborough County. On the other hand, OB/GYN called an expert who had been hired by Fort Brooke who based his opinion on liquidation value and not fair market value. While he had appraised the subject property five times over five years, he could not present his files or notes from the previous appraisals and was thus unable to state the underlying facts on which his opinion was based.

In the case of *Marks v. Marks,* 576 So.2d 859 (Fla. 3d DCA 1991), the expert did not bring the underlying data on the survey and he could not present that information on cross-examination. The Third District Court of Appeals held that based on this, his opinion should have been excluded. Similar holdings were handed down in *Newell v. Best Security Systems, Inc.,* 560 So.2d 395 (Fla. 4th DCA 1990) and *Roberts v. State,* 164 So.2d 817 (Fla.1964). These holdings are supported by plain logic for the simple reason that there is no way to rebut a secret, purely subjective formula which is not documented, or is no longer available, thus the opposing party is prevented from testing the validity of the expert's conclusions. Two of the comparables of OB/GYN's experts consisted of unaccepted offers to purchase and the listing price. This type of data was uniformly rejected as a valid indication of the value of the property in *Sharp v. U.S.,* 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903) where the state court held the evidence inadmissable because, again, there is no opportunity to cross examine and, as characterized by the state court, such testimony concerning offers and listings are too speculative to form any solid determination of the value of land. Numerous decisions followed the same. *U.S. v. Smith,* 355 F.2d 807 (5th Cir.1966); *U.S. v. 158.24 Acres of Land,* 696 F.2d 559 (8th Cir.1982); *Missouri Baptist Hospital v. U.S.,* 213 Ct.Cl. 505, 555 F.2d 290 (1977); *Leslie E. Brooks Co. v. Long,* 67 Fla. 68, 64 So. 452 (1914); *Kalb v. International Resorts. Inc.,* 396 So.2d 199 (Fla. 2d DCA 1981); *Orlando–Orange County Expressway Authority v. Diversified Services, Inc.,* 283 So.2d 876 (Fla. 4th DCA 1973). only one improved comparable identified by the OB/GYN expert was even remotely similar to the subject medical facility. The others were three-or four-story commercial offices in a building located in an industrial area, one being located in Pinellas County on U.S. 19 in a non-medical node almost 40 miles from the subject property.

In light of all this, this Court is constrained to reject completely the opinion of the expert of OB/GYN and accept that the subject property had a value of at least $1,900,000.00. Based on the foregoing, this Court is satisfied that the Motion for Summary Judgment filed by OB/GYN should be denied, and the objection of the Debtor to the claim of OB/GYN should be sustained.

■ This leaves for consideration the Motion for Summary Judgment filed by Fort Brooke, which is directed to Count IV. Count IV seeks to avoid the judicial lien of Fort Brooke, and others, upon the Debtor's stock a professional association pursuant to § 544 of the Bankruptcy Code, which provides in pertinent part, as follows:

§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

The question is one of perfection, and must be determined under Florida law. Under Florida law, possession is required in order to perfect a security interest in certificated securities. § 678.321(1), (2). However, § 678.317(1) provides, in relevant part:

Subject to the exceptions in subsection (3) and (4), no attachment or levy upon a certificated security or any share or other interest represented thereby which is outstanding is valid until the security is actually seized by the office making the attachment or levy.

The attachment is not valid until the security is actually seized, and the lien therefore, is perfected upon seizure of the stock by the sheriff. *In re Trodglen*, 155 B.R. 601 (Bankr.S.D.Fla.1993). In the current instance, Fort Brooke obtained a writ of execution which was docketed on April 2, 1992 and delivered to the Sheriff. The Sheriff levied on the stock on June 18, 1992, and currently has possession of the stock. Based upon the foregoing, this Court is satisfied that Fort Brooke had a perfected interest in the stock at the time of the commencement of this case, and therefore, is entitled to judgment in its favor.

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by OB/GYN is hereby denied and the adversary proceeding shall be scheduled for pre-trial conference before the undersigned in Courtroom A of the United States Bankruptcy Court, 4921 Memorial Highway, Tampa, Florida, on June 7, 1994 at 11:00 am

ORDERED, ADJUDGED AND DECREED that the Objection to Claim # 12 of OB/GYN is hereby sustained, and the Claim of OB/GYN is hereby disallowed. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by Fort Brooke is hereby granted and the lien held by Fort Brooke against the stock in Drs. Shear, Ahearn & Associates, P.A. remains in full force and effect.