**In re Peter DARIOS, Debtor.**

**No. 99–5939–BKC–3P3.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 14, 2001.

Robert Altman, Palatka, FL, for debtor.

Thomas Lobello, Jacksonville, FL, for Frank Hierl.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon Debtor's Objection to Claim 4 filed by Frank Hierl. The Court held a hearing on December 13, 2000. Upon the evidence and the submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On August 4, 1999 Peter Darios ("Debtor") filed a Chapter 7 bankruptcy petition. (Doc. 1.)

2. Frank Hierl ("Hierl") filed Claim 4 in the amount of $51,167.61. The claim is based on a judgment obtained by Hierl against Debtor, Michael Rosa ("Rosa") and John David ("David"). On March 24, 1998 the Circuit Court entered a judgment in the amount of $43,733.00 ($39,462.00 joint-

ly and individually against Debtor, Rosa, and David and $4,271.00 against Debtor only). (Joint Ex. 1.)

3. The Clerk of the Circuit Court entered two writs of execution. (Joint Comp. Ex. 2.)

4. Hierl obtained a lien against all non-exempt real property of Debtor, Rosa, and David as a result of the recorded judgment and filed an affidavit to that effect pursuant to Fla.Stat. ch. 55.10. Included with the affidavit is a copy of a consent order which provides an additional award of attorney's fees in favor of Hierl as to Rosa and David only, in the amount of $1,843.50. (Joint Ex. 3.)

5. On January 5, 2000, as a result of one of the writs of execution issued on March 24, 1998, a sheriff's bill of sale conveyed to Hierl for $1.00 a parcel of real property previously owned by Rosa.[1] (Joint Ex. 4.)

6. On January 16, 2000 Hierl entered into a handwritten contract to sell the parcel of real property to Lisa and Andrew Puttick (the "Putticks") for $95,000.00. (Joint Ex. 5.)

7. Hierl and the Putticks executed a more formal "Vacant Land Contract" on January 30, 2000. (Joint Ex. 6.)

8. On March 22, 2000 the case was converted to Chapter 13. (Doc. 25.)

9. On June 9, 2000 a closing took place at which Hierl conveyed the property to the Putticks for $95,000.00. After closing costs and the payoff of a first mortgage on the property, Hierl received net proceeds of $56,179.76. (Joint Ex. 7.)

10. Hierl credited the $1.00 sheriff's sale price against the judgment. (Hierl's

Test. December 13, 2000.) Claim 4 reflects the $1.00 credit.

### CONCLUSIONS OF LAW

■ A proper proof of claim is presumed valid, and is prima facie evidence of the validity of both the claim and its amount. *In re St. Augustine Gun Works,* 75 B.R. 495, 498 (Bankr.M.D.Fla.1987). Consequently, the objecting party has the burden of coming forward with sufficient evidence to rebut the prima facie validity of the claim. *In re Haack,* 165 B.R. 501, 503 (Bankr.M.D.Fla.1994) (citing *St. Augustine Gun Works,* 75 B.R. at 496). Once the objecting party meets this burden, the claimant has the ultimate burden of proving the validity and amount of the claim. *Id.*

■ Debtor objects to Claim 4 on the basis that the value of the real property, rather than the $1.00 sheriff's sale price, should be credited against the judgment. Debtor points out that such a credit would fully satisfy the judgment, and the claim should therefore be disallowed in its entirety. Debtor argues that any other finding would result in a windfall to Hierl and an injustice. Hierl argues that only the $1.00 sheriff's sale price should be credited against the judgment. Hierl contends that Debtor's failure to complain or object to the foreclosure sale in state court constitutes a waiver of his rights and precludes him from objecting to the claim on the basis that the sale price was inadequate. Furthermore, Hierl asserts that inadequacy of price, standing alone, is not a ground for setting aside a judicial sale. Finally, Hierl argues that the interest of finality mandates that a determination be made as to what is owed on a judgment after a

---

**1.** The legal description of the property is: Lot 8, Matanzas Cut Subdivision, According to the Plat Thereof Recorded in Map Book 21, Pages 11 and 12, Public Records of St. Johns County, Florida.

sheriff's sale and that his eventual sale of the property at a profit is irrelevant.

In support of his objection, Debtor relies on *Six v. OB/GYN Solutions, L.C. (In re Six)*, 220 B.R. 479 (Bankr.M.D.Fla.1994). In *Six* the debtor was a general partner in a partnership which was the mortgagor of commercial real property. The debtor also personally guaranteed the note. When the note fell into default, the mortgagee foreclosed on the property. The state court entered a final judgment of foreclosure in the amount of $1,838,196.02. The mortgagee purchased the property at the foreclosure sale for $1,200,000.00. The subsequent final judgment for damages did not reflect a credit for the sale price or for the fair market value of the property.

Thereafter, the mortgagee assigned the judgment and conveyed the property to Ob/Gyn. In response to Ob/Gyn's levy on stock he owned, the debtor filed a motion to satisfy judgment in the state court. The debtor then filed a Chapter 11 bankruptcy petition. Ob/Gyn filed a proof of claim which reflected a credit of the $1,200,000.00 sale price. The debtor objected to the claim contending that the liability should have been reduced by the fair market value of the property rather than the sale price. The court concluded that the amount of the credit was an issue that should have been addressed by the state court and was therefore res judicata. Invoking an equitable exception to res judicata, however, the court held that the fair market value of the property, rather than its sale price, should have been credited to the liability. Finding that the fair market value of the property exceeded the amount of the liability, the court held that the judgment was satisfied and disallowed the claim.

The case was appealed to the district court. *Six v. Ob/Gyn Solutions, L.C.*, 174 B.R. 339 (M.D.Fla.1994). Noting that the application of res judicata to the issue (of what amount should have been credited to the judgment) would have resulted in a windfall to the creditor, the district court affirmed the bankruptcy court's decision. "In accordance with this broad [equitable] power, the bankruptcy court may adjust claims to avoid injustice or unfairness." *Id.* at 341 (citing *Shapiro v. Saybrook Mfg. Co., Inc. (In re Saybrook Mfg. Co., Inc.)*, 963 F.2d 1490, 1495 (11th Cir.1992)).

The case was appealed to the Eleventh Circuit Court of Appeals, which affirmed the district court's decision. *Six v. Ob/Gyn Solutions, L.C. (In re Six)*, 80 F.3d 452, 457 (11th Cir.1996). However, the Court noted that the parties' emphasis on res judicata overlooked the procedural posture of the proceeding in the bankruptcy court. Instead, the court focused on the fact that Ob/Gyn's failure to obtain a proper deficiency adjudication in state court followed by its placement at issue of the offset in the bankruptcy court enabled the bankruptcy court to properly invoke equitable principles. "By making the previously unadjudicated offset part of its claim, Ob/Gyn submitted the proper valuation of the real estate to the bankruptcy judge to be weighed in its determination of whether all, part, or none of the claim should be allowed." *Id.* at 456. However, the court pointed out that its reasoning was not an indication that the outcome of the case would have been different if OB/Gyn had not raised the offset issue in its claim.

In the instant case, Hierl is not attempting to make a "previously unadjudicated" offset part of his claim. Hierl has consistently maintained the position that Debtor was entitled to only a $1.00 credit against the judgment. The Eleventh Circuit's reasoning is therefore unavailing. However, the reasoning of both the bankruptcy and the district court provides guidance.

While the Court recognizes the importance of finality, the Court declines to ap-

ply res judicata to the amount of the offset. Offsetting the judgment by the $1.00 purchase price and allowing Hierl's claim to stand as filed would provide a windfall to Hierl and would work an injustice. In effect, Hierl asks the Court to ensure that he gets paid twice. The Court declines to do so. Although Hierl points out that he made a calculated business decision to levy on the property and that there was no guarantee he would ever sell it, his entry into a Vacant Land Contract a mere 25 days after the sheriff's sale and the actual sale of the property approximately four months later, render such protestations meaningless.

■ The Court holds that the amount of the judgment must be offset by the fair market value of the property on the date of the sheriff's sale reduced by closing costs and the first mortgage on the property.[2] Hierl offers no estimate of the fair market value of the property on the date of the sheriff's sale. Debtor contends that the property's fair market value on the date of the sale was $95,000.00, the price set forth in the Vacant Land Contract and the price for which Hierl later sold the property. The Court agrees with Debtor's valuation and finds that the fair market value on the date of the sheriff's sale was $95,000.00. After subtracting closing costs and the first mortgage on the property, Hierl received net proceeds of $56,179.76. Accordingly, Debtor is entitled to an offset of the judgment in that amount.

As of August 4, 1999, the date of the filing of the petition, the amount of the judgment plus accrued interest was $51,167.61, as reflected by Claim 4. The interest accrual from August 4, 1999 until the June 9, 2000 sale date was $4,398.90. Thus the amount of the judgment plus accrued interest as of June 9, 2000 was $55,566.61. Because the net proceeds from the sale exceeded the amount of the judgment debt as of the date of the sale, Hierl was paid in full.

## CONCLUSION

The application of res judicata to an offset against the judgment of the $1.00 sheriff's sale price would provide a windfall to Hierl and would produce an inequitable result. Accordingly, Debtor is entitled to an offset against the judgment in the amount of the fair market value of the property on the date of the sheriff's sale, reduced by closing costs and the first mortgage on the property. Because the net proceeds from the sale exceeded the amount of the judgment debt as of the date of the sale, Hierl was paid in full. The Court will therefore disallow Claim 4 in its entirety and will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

---

2. Fair market value is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction; the point at which supply and demand intersect." BLACK's LAW DICTIONARY 1549 (7th ed.1999).