**In re Milos TOMASEVIC, Debtor.**

**No. 99–14375–8C3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 25, 2001.

Roy A. Diaz, Ft. Lauderdale, FL, for Wilshire Credit Corporation.

Larry Segal, Tampa, FL, for Washington Mutual Bank, F.A.

Terry Smith, Bradenton, FL, trustee.

### ORDER DETERMINING DEBTOR'S OBJECTION TO CLAIM NO. 4

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This case came on for final evidentiary hearing on June 1 and July 16, 2001, of the debtor's second amended objection to Claim No. 4 of Washington Mutual Bank ("Washington Mutual" or "bank") (Document Nos. 81 and 84). At the conclusion of a full day and a half evidentiary hearing, the court requested post-hearing memoranda. The debtor filed a brief (Document No. 109) on August 28, 2001. Washington Mutual filed a brief (Document No. 113) on September 4, 2001. The debtor filed a supplemental response to Washington Mu-

tual's brief (Document No. 114) on September 5, 2001.[1]

This is a Chapter 13 case. Washington Mutual holds the first mortgage on the debtor's homestead. The debtor objects to the allowance of Washington Mutual's claim on several theories and seeks additional damages for the bank's alleged violations of the Truth in Lending Act.[2] This controversy is a small piece of a continuing, contentious, and hotly contested conflict between the debtor and Washington Mutual, most of which has been fought and determined in state court.

After considering all of the testimony, particularly the demeanor and credibility of the witnesses, the exhibits admitted at trial, the pleadings and written arguments of the parties, including the authorities cited by the parties, the court determines that the debtor's objection to Washington Mutual's claim should be sustained in part and overruled in part. The court further determines that the debtor has failed to establish that Washington Mutual violated the provisions of the Truth in Lending Act.

## I.

## BACKGROUND

The debtor made a loan application to Great Western Bank ("Great Western") on April 14, 1988, for a purchase money mortgage loan (Debtor's Exhibit No. 28).[3] At that time, the parties executed a good faith estimate of settlement charges (Debtor's Exhibit No. 29). Great Western provided to the debtor an unsigned description of the various loan programs offered by Great Western (Debtor's Exhibit No. 26) and an unsigned initial calculation of specific finance options available to him (Debtor's Exhibit No. 27). The debtor also signed a loan disclosure (Bank's Exhibit 6 and Debtor's Exhibit No. 30) that included a disclosure of Great Western's right to require an escrow account at any time.[4] Neither document contained a provision that described how Great Western treated

1. The debtor styled this response as an urgent request for further oral argument and requested additional hearing time in which to counter arguments set forth in Washington Mutual's brief. The court conducted a lengthy hearing of this matter, much of which was taken up by the debtor's thorough presentation of his position through testimony and evidence, largely argumentative in nature. As a consequence, the court has a thorough understanding of the issues and the parties' positions. The court can see no benefit in granting additional oral argument and will instead treat the motion for oral argument as a supplemental post-hearing submission.

2. The debtor's claim for damages is a set-off claim that is more properly the subject of an adversary proceeding pursuant to F.R.B.P. 7001(1) and F.R.B.P. 3007. Washington Mutual made no objection to the procedural posture of the debtor's set-off claim, however, and the parties joined issue at the June 1 and July 16, 2001, hearing. *See In re Chapman*, 132 B.R. 132, 144 (Bankr.N.D.Ill.1991)[debt-

or's failure to file as an adversary proceeding objection to claim that included set-off claims not fatal]. The court will accordingly determine the merits of the disputes in the procedural posture—a contested matter—the parties have framed.

3. Washington Mutual is the transferee of Great Western, the original holder of the note and mortgage upon which the claim is based.

4. The debtor points to a discrepancy in this evidence as proof of Washington Mutual's deceit in its dealings with him. The bank's exhibit contains the signature's of the debtor, the debtor's wife, and an agent for the bank while the debtor's exhibit contains only his and his wife's signatures. Neither exhibit is dated. Upon review of these documents, there is nothing about them that suggests any deceit or deception. In any event, for the reasons set forth in Section III.C. *infra*, the court need not determine any issue involving these exhibits.

partial payments or its use of a suspense account.

Great Western executed a loan commitment (Bank's Exhibit No. 9 and Debtor's Exhibit No. 31) on April 22, 1988. Great Western did not give the debtor any notice of rescission rights.

The parties closed the loan on June 24, 1988. At the closing, the debtor and his wife signed a promissory note (Bank's Exhibit 2 and Debtor's Exhibit No. 19) and a mortgage (Bank's Exhibit No. 3 and Debtor's Exhibit No. 20), among other papers (Bank's Exhibit Nos. 5, 7, and 8). The promissory note provided for the debtor's payment of collection costs and attorney's fees.[5] The mortgage authorized the bank to force place insurance under specific circumstances and also to require an escrow account at any time.

The mortgage loan related to the debtor's purchase of a home. The debtor made a down payment on the purchase price of the home in the amount of $36,000. In making this substantial down payment, the debtor was motivated by his desire to keep his indebtedness for the home purchase below the loan to value level that would require an escrow account to pay taxes and insurance in advance. He instead preferred to pay his taxes and insurance directly as they became due. The debtor had recently retired and was starting a small machine shop. He anticipated fluctuation in the revenues from that business and wanted to have the flexibility of paying his tax and insurance obligations annually rather than in monthly payments.

The debtor financed the remaining $116,200 of the purchase price with an adjustable rate mortgage. Following the closing of the loan, the debtor commenced payment on the mortgage loan and everything proceeded satisfactorily between the debtor and Great Western for several years.

By early 1993, however, the debtor had become seriously delinquent on his property taxes. Great Western paid the delinquent taxes (of several years) on his behalf (Bank's Exhibit No. 13). It then provided the debtor with an opportunity to repay those tax payments over a 48 month period without interest (Bank's Exhibit No. 13). Alternatively, the debtor could avoid the imposition of an escrow account by paying to the bank the full balance of the delinquent tax payments paid on the debtor's behalf by the bank. The debtor did not repay the delinquent taxes to the bank, and in February 1993 Great Western notified the debtor that it now required that a tax escrow account be established (Bank's Exhibit No. 12 and Debtor's Exhibit No. 33). The debtor was extremely unhappy with these developments.

In 1995, Great Western also sent a letter to the debtor asking for proof of hazard insurance and stating its intention to force place insurance if the debtor did not comply (Debtor's Exhibit No. 41 and Bank's Exhibit No. 10). The debtor apparently attempted to procure insurance with his carrier but was unable to do so due to the carrier's change in its underwriting policies in the wake of Hurricane Andrew (Debtor's Exhibit No. 42 and Document No. 93, transcript of hearing held on June 1, 2001, at 165, lines 5–20).[6]

---

**5.** The promissory note specifically provided in ¶ 6 that the debtors were obligated to pay "all costs and expenses of collection and reasonable attorney's fees, including costs, expenses and reasonable attorneys' fees on appeal, if collected by foreclosure, other legal proceed- ings or through an attorney at law or if incurred to protect or sustain the lien of the Mortgage or any other instrument securing this Note."

**6.** The debtor represented in many of the papers he has filed that Great Western and/or

At some point thereafter, the debtor unsuccessfully attempted to persuade Great Western to discontinue the escrow account. (Document No. 93, transcript of June 1, 2001, hearing, at 158, lines 21–25, and at 159, lines 1–24). He also wrote many letters to the bank about other problems he perceived about the way in which his loan account was being handled (Debtor's Exhibit Nos. 13, 19, and 20).

Unable to resolve these perceived problems through correspondence with the bank, the debtor began to send payments in the amount that he believed was due, often deducting the escrow account payment, rather than the scheduled payment. The bank treated these payments as partial payments and put them into a suspense account. When the suspense account contained sufficient monies to make a full payment, the bank would credit the debtor's account. Not surprisingly, the debtor began to accumulate late fees and delinquencies in payments, thereby exacerbating his problems with the bank.[7]

In 1997, Great Western initiated a foreclosure action against the debtor in state court seeking to foreclose its mortgage on the debtor's homestead. The action was ultimately dismissed for Great Western's failure to effectuate service of process on the debtor.[8] While the foreclosure action was pending, Great Western sold the debtor's loan to Washington Mutual.

In 1998, Washington Mutual sent a letter to the debtor (Bank's Exhibit No. 11) asking for proof of hazard insurance and stating its intention to force place insurance if the debtor did not comply.[9]

In 1998, Washington Mutual also initiated a second foreclosure action in state court, Case No. 98–6757CI–SEC–11, seeking to foreclose its mortgage on the debtor's homestead. Washington Mutual asserted that the debtor had defaulted on his obligations to the bank by failing to make his payment for April 1998 and all subsequent payments. The debtor vigorously opposed the foreclosure action. After a

---

Washington Mutual imposed force placed insurance on him. He also testified to that effect in court. There is no evidence before the court as to the cost to the debtor of this insurance or the duration of the force placed insurance. It is also unclear on the evidence whether Great Western or Washington Mutual required advance payments for hazard insurance to be made to the debtor's escrow account. In any event, for the reasons stated in Section III.C. *infra,* the answers to these questions are irrelevant to the issues before the court.

7. The debtor contends that Washington Mutual improperly credited the payments held in suspense to late fees in advance of crediting principal and interest causing further late fees to accrue. (Debtor's Exhibit Nos. 34, 37, and 39). For the reasons stated in Section III.C. *infra,* the way in which Washington Mutual credited payments prepetition is irrelevant to the issues decided in this decision.

8. The debtor filed a civil action in state court, Case No. 97–8277–CI, seeking damages against Great Western and Washington Mutu-

al for actions taken in the 1997 foreclosure suit. This court granted stay relief on December 12, 1999 (Document No. 18) modifying the automatic stay to permit the parties to litigate that action. Although the debtor has made numerous references to the relationship between his claims made in the state court civil action and the objections and claims he makes here, there is absolutely no evidence before the court that links them in any way. The debtor has offered into evidence four documents from the state court file (Debtor's Exhibit Nos. 44, 45, 46, and 47). Given the history and longevity of that case, however, the court assumes that there are many more it has not seen. The court cannot determine from these exhibits the specific issues to be decided in that case, whether those issues have been disposed, and, if they have, what the disposition was.

9. The court cannot determine the upshot of this letter on the evidence before it. *See* n. 6, *supra.*

lengthy trial, the court entered judgment in favor of the bank on August 8, 1999 (Bank's Exhibit No. 4), in the amount of $118,648.71.

The judgment amount was comprised of $98,344.78 in principal, $9,985.90 in pre-judgment interest through August 5, 1999, $732.92 in late fees, $1,495.06 in escrow advances, $62.22 in property inspection fees, $185 for a supplemental title search, $149.50 for foreclosure filing fee, $156 for service of process costs, $30 in corporate search fees, and $7,500 in attorney's fees through August 5, 1999.

The judgment also scheduled a foreclosure sale of the debtor's homestead for September 10, 1999. In preparation for that sale, Washington Mutual obtained a broker's price opinion (Bank's Exhibit No. 15) that established a market value for the debtor's homestead "as is" of between $200,000 and $230,000.

On September 2, 1999, the debtor filed a petition under Chapter 13 of the Bankruptcy Code to reorganize his debts and to stay the foreclosure sale. In his Chapter 13 plan (Document No. 2), the debtor proposed to pay the arrearage claim of Washington Mutual without interest over 36 months or the life of the plan. The court set January 3, 2000, as the last date to file proofs of claim.

Washington Mutual timely filed a proof of secured claim (Claim No. 2) in the amount of $115,671.21 (an amount less than the foreclosure judgment) on October 29, 1999. The proof of claim included an arrearage claim in the amount of $23,199.14, comprised of $17,859.60 for 18 prepetition payments of principal, interest, and escrow advances, $784.75 in late fees, $4,275.28 in foreclosure fees (an amount substantially less than the fees and costs awarded in the foreclosure judgment), $50 for a proof of claim filing fee, $160 for broker's price opinion costs, and $69.50 in property inspection fees.

Washington Mutual also filed a motion for relief from stay (Document No. 12) seeking to conclude its foreclosure sale, to defend against the debtor's appeal of the foreclosure judgment, and to defend against the debtor's civil action against it. In its motion, Washington Mutual did not assert that the debtor was in default of his obligation to make post-petition payments on the mortgage loan. The debtor filed a response (Document No. 15) seeking dismissal of the motion for relief from stay. Washington Mutual filed a statement in compliance of preliminary hearing order (Document No. 16) stating an amount due that included interest through November 24, 1999, at a per diem rate of $18.40 and crediting a payment of $980.[10]

The court conducted a hearing of the contested motion to modify stay and, on December 22, 1999, entered an order modifying the automatic stay and granting adequate protection (Document No. 18). That order modified the automatic stay to permit Washington Mutual to defend

---

**10.** The debtor correctly points out that the interest calculation in this statement differs from the bank's calculation in its proof of claim. The discrepancy is, however, irrelevant to the issues now before the court. Washington Mutual has not offered this statement in support of its prepetition claim. Indeed, the court did not rely on the dollar amounts contained in the statement of the affidavit filed in support of the motion when it determined Washington Mutual's motion to modify stay because there was no post-petition default in the mortgage loan at issue in that motion. For present purposes, the statement is simply an inconsistent prior statement by Washington Mutual admissible against its interest. Other evidence, however, substantially outweighs this admission, and the court disregards it in determining the amount of Washington Mutual's arrearage claim.

against the debtor's civil action and the debtor's appeal of the foreclosure judgment but prohibited the sale of the debtor's homestead or the enforcement of any judgment obtained. The order also granted adequate protection of regular contract payments to Washington Mutual during the post-petition period. The order required the debtor to give proof of insurance on request and to provide access to the property for inspection purposes. Finally, the order contained default provisions by which Washington Mutual could obtain final relief from the automatic stay upon the debtor's default of the terms of that order.

The court confirmed the debtor's plan (Document No. 27) on June 13, 2000. The order confirming plan provided that the debtor would cure Washington Mutual's prepetition arrearage claim through the plan without interest in 36 months or until the claim was paid in full. The court entered an order allowing and disallowing claims and ordering disbursements (Document No. 37) on August 31, 2000.

The debtor immediately commenced filing a series of motions and objections seeking to put into issue his objections to the claims of Washington Mutual and other creditors (Document Nos. 39A, 44, 48, and 54). All of these motions and objections were denied by the court for procedural reasons. The debtor also sent a number of letters detailing his complaints and concerns about his account to Washington Mutual.[11]

The state appellate court affirmed Washington Mutual's foreclosure judgment sometime in June 2000. The appellate court granted attorney's fees to Washington Mutual for services performed in defending the appeal in an amount to be determined by the state trial court. (Debtor's Exhibit No. 65).

On January 18, 2001, the debtor filed a motion to compel answers of Washington Mutual and for sanctions (Document No. 52) and a duplicate motion (Document No. 62). The court conducted a preliminary hearing of the motions on February 28, 2001. The court was under the impression that the matters at issue in the motions were to be substantively addressed at the June 1, 2001, hearing of the debtor's objection to Washington Mutual's claim and so treated the duplicate motions as a discovery dispute. The court denied the motions without prejudice (Document No. 71).[12]

On February 13, 2001, the debtor filed an objection to Washington Mutual's claim (Document No. 64). Washington Mutual filed a response to the debtor's objection (Document No. 73). The court conducted a preliminary hearing on April 4, 2001, of the debtor's objection and scheduled it for final evidentiary hearing on June 1, 2001. At the preliminary hearing, Washington Mutual indicated its intention to file an amended proof of claim. The court direct-

---

**11.** Much of this correspondence as well as Washington Mutual's correspondence to the debtor was admitted into evidence at the June 1, 2001, hearing (Debtor's Exhibit Nos. 7, 8, 9, 10, 11, 17, and 18). The court need not describe at length the substance of the communications because the correspondence is offered in support of the debtor's claim that Washington Mutual is liable for violations of the Real Estate Settlement Procedures Act ("RESPA"). The debtor has raised that claim by separate motion (Document No. 98), how-

ever, and it is not now before the court (Document Nos. 111 and 112).

**12.** The debtor later filed a motion (Document No. 98) putting into issue Washington Mutual's obligations under RESPA with respect to the debtor's communications about the application of his post-petition payments. That motion has not yet been set for hearing. *See* n. 11, *supra*.

ed that the amended claim be filed promptly.

Washington Mutual immediately filed its amended proof of claim (Claim No. 4) on April 5, 2001, in the amount of $131,536.71. Washington Mutual attached to the proof of claim a copy of the debtor's promissory note, mortgage deed, and its attorney's post-petition time records. The proof of claim included an arrearage claim in the amount of $39,064.64, comprised of $17,859.60 for 18 prepetition payments of principal, interest, and escrow advances, $784.76 in late fees, $50 for a proof of claim filing fee, $160 for broker's price opinion costs, $69.50 in property inspection fees, $185 for supplemental title search, $149.50 for foreclosure filing fee, $156 for service of process, $30 in corporate search fees, $60.28 for a publication of sale, and $19,485 in attorney's fees ($7,500 in pre-petition attorney's fees and $11,985 in post-petition attorney's fees) and $75 for the motion for relief from stay filing fee.

Claim No. 4 therefore amended Claim No. 2 in two respects. First, it included fees and costs assessed in the foreclosure judgment that had not been included in the earlier claim. Second, it included post-petition attorney's fees.

The debtor filed an amended objection to Washington Mutual's claim (Document No. 81) taking issue with the amounts requested in Claim No. 4. The debtor filed a second amended objection (Document No. 84) on May 25, 2001.

As part of its routine practice, the court granted the Chapter 13 trustee's objection to the amended claim as untimely filed (Document No. 80) and disallowed the amended claim. The trustee obviously mistakenly filed this objection not knowing that the court had authorized Washington Mutual to amend its claim. The court also mistakenly granted the motion not realizing the fact that it had already placed this case on a trial track. Washington Mutual filed a motion for reconsideration of that order (Document No. 85) on May 25, 2001, reciting that the court had made an obvious mistake. The court granted the motion, acknowledged the obvious mistake, and vacated the order disallowing the claim (Document No. 86) on May 31, 2001. The clerk gave the debtor and counsel for Washington Mutual copies of that order at the beginning of the evidentiary hearing on June 1, 2001. The court then devoted an entire day to receiving the testimony and evidence.

After the conclusion of the June 1, 2001, hearing the debtor filed a motion to reopen the evidence (Document No. 89) claiming surprise and prejudice because of the late entry of the order granting reconsideration and vacating the mistakenly entered order disallowing Claim No. 4. In the motion, the debtor sought a hearing to offer additional evidence and to re-examine the bank's witnesses. Washington Mutual filed a response in opposition to the debtor's motion (Document No. 90). The court granted the motion in part and scheduled a further hearing to allow the debtor to put on additional evidence but denied the motion in all other respects (Document No. 94). The court conducted that hearing on July 16, 2001.

The debtor filed a motion to reconsider the court's order granting in part the motion to reopen the evidence (Document No. 99). At the beginning of the July 16, 2001, hearing, the court ruled orally on that motion. The court denied the motion because the debtor had clearly cross-examined the bank's witnesses with respect to the amendments in Claim No. 4 at the earlier hearing (Document No. 92, transcript of hearing held on June 1, 2001, at 52–57, and Document No. 93, transcript of hearing held on June 1, 2001, at 121–128). The court also noted that any benefit that

would inure to the debtor in re-examining the witnesses, if they could be subpoenaed, would be greatly offset by the inconvenience and expense of recalling the witnesses. (Document No. 101, transcript of hearing held on July 16, 2001, at 11, lines 10–25, and at 12, lines 1–10).

## II.

### ISSUES

First, the debtor contends that the bank has failed to substantiate its claim for post-judgment fees and costs requested in its claim.

Second, the debtor contends that he should not have to pay post-petition attorney's fees and costs through his Chapter 13 plan. In addition, the debtor argues that Washington Mutual's attorney's fees requested in its proof of claim are inflated and unreasonable.

Third, the debtor asserts two set-off claims for damages for alleged violations of Sections 121 and 125(a) of the Truth in Lending Act, 15 U.S.C. §§ 1631 and 1635(a). In his first set-off claim, the debtor contends that Great Western failed to provide a full and meaningful disclosure of the terms of the mortgage loan, as required by Section 121 of the Truth in Lending Act, 15 U.S.C. § 1631, and Regulation Z, 12 C.F.R. § 226.18, especially with respect to the bank's ability to require the escrow of advanced tax and insurance payments, the bank's use of a suspense account to hold partial payments,

the bank's ability to impose force placed insurance, and the debtor's potential legal costs and rights in case of a dispute.

For his second set-off claim, the debtor contends that Great Western failed to provide notice of the debtor's rescission rights as required by Section 125(a) of the Truth in Lending Act, 15 U.S.C. § 1635(a), and the debtor is thus entitled to damages pursuant to Section 125(b) of the Truth in Lending Act, 15 U.S.C. § 1635(b).

## III.

### DISCUSSION

In this objection to claim, the court must determine the amount owed by the debtor to Washington Mutual as of the petition date, including the amount of prepetition arrearages that the debtor must pay through the plan to cure and reinstate the mortgage. The court must also determine Washington Mutual's entitlement to attorney's fees and post-petition costs to be paid through the plan.[13] The court is not here concerned, however, with the debtor's post-petition payments to Washington Mutual.[14]

### A.

### DEBTOR'S OBJECTION TO PREPETITION ARREARAGE

Section 502(a) of the Bankruptcy Code provides that a "claim or interest, proof of

---

**13.** Washington Mutual seeks the allowance and determination of those fees and costs through its amended claim. A request for attorney's fees and post-petition costs is procedurally made by motion pursuant to Section 506(b) of the Bankruptcy Code. *See e.g., In re Rathe,* 114 B.R. 253, 256 n. 4 (Bankr.D.Idaho 1990). The debtor made no objection to the procedural posture of Washington Mutual's request for post-petition attorney's fees, however, and the parties joined

issue at the June 1 and July 16, 2001, hearings. The court will accordingly determine the merits of the disputes in the procedural posture the parties have framed.

**14.** The debtor's post-petition payments are, however, at issue in the debtor's claim under RESPA, which are the subject of a separate motion filed by the debtor. *See* n. 11 and n. 12, *supra.*

which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." The debtor has done so here.

Rule 3001(a) dictates that the proof of claim filed "shall conform substantially to the appropriate Official Form." F.R.B.P. 3001(a). Similarly, the directions to Official Form 10, Proof of Claim, provide that "[c]reditors must attach to the proof of claim form copies of any documents showing that the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents."

Washington Mutual attached to its amended claim a copy of the promissory note and mortgage that established the debtor's contractual obligations to the bank. Washington Mutual also attached a copy of its attorney's time records for work performed in connection with its defense of the debtor's appeal of the foreclosure judgment and its protection of the bank's secured claim in the debtor's bankruptcy case. Washington Mutual did not attach a copy of the foreclosure judgment.

■ Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that "[a] proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." The party objecting to the claim has the burden of going forward with equivalent probative evidence to rebut the presumption of validity and amount. *In re Fleming*, 258 B.R. 488, 489 (Bankr.M.D.Fla.2000). Once the objecting party has rebutted the presumption, the claimant has the ultimate burden of proving its claim. *In re Homelands of DeLeon Springs, Inc.*, 190 B.R. 666, 668 (Bankr. M.D.Fla.1995), *citing In re VTN, Inc.*, 69 B.R. 1005, 1008 (Bankr.S.D.Fla.1987).

■ The debtor here has testified under oath as to his belief that the amounts sought by Washington Mutual are unsupported and/or unreasonable. In the absence of any documentary evidence of those amounts filed with the proof of claim, the court concludes that the debtor has met his burden in rebutting the presumption of validity of Claim No. 4. Accordingly, Washington Mutual bears the burden of establishing the amount and validity of its claim.

### 1.

### *Mortgage Foreclosure Judgment Amounts*

At the hearing, the court admitted into evidence the final judgment of foreclosure in favor of Washington Mutual (Bank's Exhibit No. 4). That judgment establishes a substantial portion of the amounts claimed by Washington Mutual in (Claim No. 4). Other than the post-petition attorney's fees, the only amounts requested by Washington Mutual in its proof of claim that are not supported by the judgment are $44.84 for one late fee, $6.95 for one property inspection fee, $60.28 for the publication of foreclosure sale, $160 for two broker's opinion fees, $50 paid for fee to prepare a proof of claim, and $75 filing fee for motion for relief from stay.

■ Washington Mutual contends that the foreclosure judgment establishes the debtor's liability as to all amounts awarded in the judgment under the doctrine of *res judicata*. "*Res judicata* precludes reexamination not only of liability for a debt, but also its amount as well." *Ob/Gyn Solutions, L.C. v. Six (In re Six)*, 80 F.3d 452, 456 (11th Cir.1996). "When *res judicata* is invoked to give preclusive effect to a state court judgment, [the bankruptcy court] must apply state law." *Id.*

■ *Res judicata* bars relitigation of the debtor's liability and amount owed to Washington Mutual as of August 5, 1999, if four elements are met: "(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases." *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir.1986) [applying Florida law].

■ In this case, all elements are clearly met. The parties thoroughly litigated the foreclosure action and the state court rendered a judgment on the merits that was affirmed on appeal. The state court had both subject matter jurisdiction of the foreclosure action and personal jurisdiction of the parties. Thus, it was a court of competent jurisdiction. The parties in the foreclosure action are identical to the parties in this contested matter. Similarly, the debtor's objection to Washington Mutual's claim involves the same cause of action at issue in the foreclosure action— the debtor's contractual obligations under the note and mortgage.

The foreclosure judgment was entered shortly before the debtor filed his bankruptcy petition. The debtor made no payments to Washington Mutual after the entry of judgment and before the filing of the bankruptcy case. Accordingly, the court concludes that the foreclosure judgment in favor of Washington Mutual establishes the debtor's liability to the bank for prepetition arrearages in the amount of $17,859.60 for principal, interest, and escrow advances, $739.92 in late fees, $62.55 in property inspection fees, $185 for a supplemental title search, $149.50 for foreclosure action filing fee, $156 for service of process costs, $30 for corporate search fees. Washington Mutual has therefore established its entitlement in the amount of $19,182.57 for prejudgment principal, interest, and costs under the doctrine of *res judicata.*

The foreclosure judgment also establishes prepetition attorney's fees in the amount of $7,500 under the doctrine of *res judicata.* Washington Mutual can claim these fees in its prepetition arrearage claim to be paid through the plan if they satisfy Section 506(b) of the Bankruptcy Code.

Section 506(b) of the Bankruptcy Code provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim ... any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The court is required to determine first, therefore, whether Washington Mutual is an oversecured creditor. In *Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.)*, 54 F.3d 722, 724 n. 1 (11th Cir.1995), the court defined an oversecured creditor as a "secured creditor whose collateral is worth more than the amount of the debt to it." The broker's price opinion prepared on August 18, 1999 (Bank's Exhibit No. 15), just weeks before the debtor's bankruptcy filing, establishes that the debtor's home has a market worth, "as is", in the amount of $200,000 to $230,000. This evidence establishes that the debtor's home, the collateral that secures the debtor's obligation to Washington Mutual, is worth more than the total debt of $131,536.71 claimed by Washington Mutual in its amended Claim No. 4.

■ The court therefore determines that Washington Mutual is an oversecured

creditor within the meaning of Section 506(b) and is therefore entitled to prepetition attorney's fees if provided for in the debtor's promissory note and mortgage. In this case, the controlling mortgage provision for attorney's fees and costs is very broadly worded to encompass "all costs and expenses of collection and reasonable attorney's fees, including costs, expenses and reasonable attorneys' fees on appeal, if collected by foreclosure ...." The attorney's fees at issue clearly fall within the ambit of fees allowed under the note and mortgage. Washington Mutual has therefore established its entitlement in the amount of $7,500 for prejudgment attorney's fees under the doctrine of *res judicata.* Washington Mutual's entitlement to these fees has been fully, completely, and conclusively established in the state court judgment.

In sum, Washington Mutual has established its entitlement in the amount of $26,682.57 for monies owed on the mortgage foreclosure judgment.

### 2.

### *Post–Judgment Amounts*

In its proof of claim, Washington Mutual also includes $397.07 for additional costs incurred after the entry of the judgment. Upon examination of the evidence, $131.95 of this amount was incurred post-petition and will be determined in Section III.B. below (Bank's Exhibit Nos. 14, 18, 29). The remaining $265.12 consists of one late fee in the amount of $44.84, $160 for broker's price opinions, and $60.28 for publication of foreclosure sale.

Anthony Evans, a bankruptcy default specialist at Washington Mutual, testified on behalf of the bank. He testified that the debtor incurred one late fee in the amount of $44.84 post-judgment and pre-bankruptcy (Document No. 92, transcript of hearing held on June 1, 2000, at 19, lines 1–16). Mr. Evans also testified that the

bank incurred fees for a broker's price opinion prepared on November 9, 1998 (Bank's Exhibit No. 17) in the amount of $85 (Document No. 92, transcript of hearing held on June 1, 2001, at 21, lines 17–25, and at 22, lines 1–7) and a broker's price opinion prepared on August 18, 1999 (Bank's Exhibit Nos. 15 and 16) in the amount of $75 (Document No. 92, transcript of hearing held on June 1, 2001, at 20, lines 11–25, and at 21, lines 1–9). The court credits this testimony and evidence and determines that Washington Mutual has established the debtor's liability in the amount of $119.84 for these post-judgment costs.

■ The court sustains the debtor's objection as to $85 for the November 1998 broker's price opinion because this cost was incurred prior to the entry of foreclosure judgment and was not assessed to the debtor in that judgment. The foreclosure judgment is determinative of the liability and amount owed by the debtor through August 5, 1999. *Res judicata* therefore precludes the bank from assessing this cost to the debtor in this bankruptcy case.

Sarah Johnson, an administrative assistant employed by Gibbons, Cohn, Neuman, Bella, Segall & Allen, the attorneys for Washington Mutual, also testified for the bank. She testified that the law firm paid on the bank's behalf $60.28 for a publication of sale notice (Exhibit Nos. 27 and 28) before the filing of the debtor's bankruptcy case (Document No. 93, transcript of hearing held on June 1, 2001, at 115, lines 19–25, and at 116, lines 1–17). The court credits this testimony and evidence and determines that Washington Mutual has established a charge in the amount of $60.28 for post-judgment costs.

In sum, Washington Mutual has established its entitlement to the amount of

$180.12 for monies owed on post-judgment prepetition costs.

### 3.

### Summary

Accordingly, the court sustains the debtor's objection as to the broker's price opinion cost in the amount of $85. The court concludes that Washington Mutual has established a prepetition arrearage claim for principal, interest, escrow, costs, and attorney's fees of $26,862.69. This is the prepetition arrearage that the debtor must pay through the plan to cure and reinstate the mortgage.

### B.

### DEBTOR'S OBJECTION TO POST-PETITION ATTORNEY'S FEES AND COSTS

■ In its proof of claim Washington Mutual includes $11,985 in post-petition attorney's fees consisting of $7,230 for services performed in defending against the debtor's appeal of the foreclosure judgment, $915 for services in connection with obtaining relief from stay, $780 for services performed in general bankruptcy matters, and $3,060 for miscellaneous services performed to protect the bank's interest during the pendency of the bankruptcy (Claim No. 4 and Bank's Exhibit No. 1).

Washington Mutual also includes $131.95 in post-petition costs consisting of $50 for a proof of claim preparation fee, $6.95 for one property inspection, and $75 for a filing fee for a motion for relief from stay.

The debtor objects to the inclusion of post-petition attorney's fees and costs in the arrearage claim that he must pay in his Chapter 13 plan. He correctly points out that the court confirmed the plan on the basis of a much lower claim than the one Washington Mutual now asserts.

More importantly, the order confirming the plan specifically provides that the trustee will pay the *"pre-petition [arrearage] claim* of [Washington Mutual] in full, without interest." (Emphasis added). For these reasons, the court determines that the order confirming plan does not provide for the payment of post-petition attorney's fees and costs through the plan.

■ To be sure, Washington Mutual devoted a significant portion of the hearing to the presentation of testimony and evidence in support of its claim for post-petition attorney's fees and costs. The debtor similarly spent a great deal of time in the examination of Washington Mutual's witnesses on this issue. The parties fully litigated the validity and reasonableness of Washington Mutual's claim for post-petition attorney's fees and costs. Post-petition claims that are not included within the plan, however, are outside the scope of the bankruptcy court's jurisdiction. *See Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1339 (11th Cir.2000). Thus, the court will not attempt to determine Washington Mutual's entitlement to post-petition fees, their reasonableness, or their amount.

The court will therefore sustain the debtor's objection as to post-petition attorney's fees and costs. Accordingly, the court will disallow without prejudice Washington Mutual's claim for post-petition attorney's fees in the amount of $11,985 and post-petition costs in the amount of $131.95. Nothing in this order is intended to determine Washington Mutual's entitlement to its post-petition attorney's fees and costs or their reasonableness or amount. Subject only to the automatic stay, Washington Mutual may seek to recover its post-petition fees and costs directly from the debtor, outside the protection of the bankruptcy court and pursuant

to non-bankruptcy law, to the extent the terms of the debt instruments permit. *Id.*

## C.

### DEBTOR'S CLAIM PURSUANT TO SECTION 121 OF THE TRUTH IN LENDING ACT, 15 U.S.C § 1631

The debtor argues that Washington Mutual (as transferee of Great Western Bank) is liable under Section 121 of the Truth in Lending Act, 15 U.S.C. § 1631, and its supporting regulations, 24 C.F.R. § 3500.7, and Regulation Z, 12 C.F.R. § 226.18, for its failure to adequately disclose the terms and conditions of the loan with respect to the bank's ability to require the escrow of advanced tax and insurance payments, the bank's use of a suspense account to hold partial payments, the bank's ability to impose force placed insurance, and the debtor's potential legal costs and rights in case of a dispute.[15]

The debtor is aggrieved by the bank's apparent ability to impose additional requirements and fees that the debtor did not contemplate or fully understand could be imposed at the time he contracted for the mortgage loan. The debtor characterizes the bank's actions as "deceitful" and "deceptive." The debtor supported his position with voluminous evidence and devoted a substantial portion of the hearing to his passionate testimony on this issue.

The court has no doubt of the debtor's sincere and heartfelt belief in the principled rightness of his position. He is a retiree on a fixed income with health problems and has clearly advocated his position, in state court and in the bankruptcy court, at a heavy personal and emotional cost.

■ The debtor is foreclosed from raising a claim for the bank's disclosure violations in this court, however, because the foreclosure judgment is *res judicata* on this issue. The debtor unsuccessfully asserted this same claim in the foreclosure action, and the state court decided the issue in Washington Mutual's favor (Document No. 93, transcript of hearing held on June 1, 2001, at 189–190).

■ Even if the debtor were asserting this claim for the first time, he would nevertheless be barred at this late date. "*Res judicata* bars not only questions actually decided, but also all grounds for recovery and defenses which might have been presented in the prior litigation between the parties." *Walker v. Contimortgage (In re Walker)*, 232 B.R. 725, 733 (Bankr.N.D.Ill.1999). The debtor's claim under this section of the Truth in Lending Act is clearly a compulsory counterclaim to the bank's claim for principal, interest, escrow advances, and late fees at issue and decided in the foreclosure action. The debtor's argument is that he should not be liable for the full amount of principal, interest, late fees, and escrow advances sought by Washington Mutual in the foreclosure action and included in this bank-

---

**15.** In his post-hearing brief, the debtor also asserts for the first time a claim that the bank violated Regulation Z, 12 C.F.R. § 226.19, by making the disclosure that "credit insurance is required." He argues that the information provided to him in Great Western's unsigned description of its various loan programs (Debtor's Exhibit No. 26) and Great Western's unsigned initial calculation of specific finance options available to the debtor (Debtor's Exhibit No. 27) contain the phrase "No Private Mortgage Insurance Costs" and Great Western was therefore obligated to disclose that the private mortgage insurance was not required. (Document No. 109 at 21 ¶ 6). It is unclear on the record whether this claim was raised and determined in the state court mortgage foreclosure action. In any event, this claim was not raised in the debtor's objection to claim and it was not tried. The court therefore need not address it now.

ruptcy case as an arrearage claim because the arrearages resulted from Washington Mutual's violation of the Truth in Lending Act. This Truth in Lending Act claim was therefore required to be raised—and indeed it was raised and decided—in the foreclosure action.

The debtor complains that the state court's determination of his claim under the Truth in Lending Act was wrong. Nevertheless, "[w]hen a state court has valid jurisdiction, alleged deficiencies in the state court process must be addressed to the trial court; they cannot be collaterally attacked" in the bankruptcy court. *In re Al's Transmission Service, Inc.*, 1995 WL 781697 at *2 (Bankr.D.Md.1995). In this case, of course, the debtor litigated an appeal of the state court's judgment through the Florida appellate court. The court of appeal affirmed the trial court. This court cannot reverse the decision of the state court that has been affirmed on appeal.

Accordingly, the court concludes that the debtor cannot recover damages on this Truth in Lending Act claim.

### D.

#### *DEBTOR'S CLAIM PURSUANT TO SECTION 125 OF THE TRUTH IN LENDING ACT, 15 U.S.C § 1635*

The debtor also contends that Washington Mutual is liable for damages pursuant to Section 125(b) of the Truth in Lending Act, 15 U.S.C. § 1635(b), for its failure to provide notice of the debtor's right to rescind the transaction within three business days of "the consummation of the transaction or the delivery of the information and rescission forms required under [Section 125(a) of the Truth in Lending Act, 15 U.S.C. § 1635(a) ] together with a statement containing the material disclosures required under this subchapter, whichever is later."

It appears that the debtor did not raise this claim in the state court foreclosure action. The cause of action at issue in this Section 125 claim goes to the making of the loan, rather than a dispute as to the obligations under the loan as was the issue in the state court foreclosure action. Because the claims are not the same, *res judicata* does not bar this Truth in Lending claim. *Walker*, 232 B.R. at 734 [claim was not barred because the only connection between the Truth in Lending claim and the earlier foreclosure action was the execution of mortgage documents].

It is undisputed that Great Western did not provide a notice of the right of rescission to the debtor at any time before the loan was funded. Washington Mutual, as transferee of Great Western, is liable pursuant to Section 131 of the Truth in Lending Act, 15 U.S.C. § 1641, for the loan originator's disclosure violations made at the commencement of the loan.

Section 125(e)(1) of the Truth in Lending Act, 15 U.S.C. § 1635(e)(1), however, specifically exempts a residential mortgage transaction as defined in Section 103(w) of the Truth in Lending Act, 15 U.S.C. § 1602(w). That section defines a residential mortgage as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."

Accordingly, it is apparent that there is no right of rescission under Section 125 of the Truth in Lending Act, 15 U.S.C. § 1635, when the transaction at issue is a purchase money mortgage.

The debtor testified that he used the money he borrowed from Great Western Bank to finance the purchase of his house (Document No. 93, transcript of hearing held on June 1, 2001, at 179). This testimony is corroborated by the settlement statement (Bank's Exhibit No. 5). The court credits this testimony and evidence. The court therefore determines that the obligation represented by the note and mortgage was a purchase money mortgage on residential mortgage.

The debtor argues that the bank's alleged disclosure violations of Section 121 of the Truth in Lending Act, 15 U.S.C. § 1631, as discussed in Section III.C. above, cause the transaction to lose its status as a purchase money mortgage (and its exemption under the Act) and somehow transform it into a consumer credit transaction that is subject to the notice of rescission requirements of Section 125(a) of the Act, 15 U.S.C. § 1635.

The court determined in Section III.C. above that the debtor was barred from pursuing his Truth in Lending Act Section 121 claim because it had been conclusively determined against him in the state court foreclosure judgment. The debtor's argument must fail on that basis. In any event, the debtor has not cited any credible authority that advances the position he asserts.

The debtor has the burden of proving this claim. *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir.2000). The debtor has failed to carry his burden of persuasion on this issue. The court must therefore disallow his claim for damages under Section 125(b) of the Truth in Lending Act, 15 U.S.C. § 1635.

## IV.

### CONCLUSION

For the reasons stated above, the court has determined that the debtor's objection to Washington Mutual's claim should be sustained as to the allowance of a prejudgment broker's opinion fee.

The court has also determined that the debtor's objection to Washington Mutual's claim should be sustained as to the allowance of post-petition attorney's fees and costs. Because the debtor's plan does not provide for the payment of post-petition attorney's fees and costs, the court does not have jurisdiction to determine the validity and amount of those fees and costs. The parties are free to litigate the validity and amount of post-petition attorney's fees and costs in a non-bankruptcy forum.

In addition, the court has determined that the debtor has not established that Washington Mutual committed any violation under the Truth in Lending Act.

Accordingly, the court orders as follows:

1. The debtor's objection to Claim No. 4 is sustained in part and overruled in part.

2. Washington Mutual's claim for $12,201.95 in broker's price opinion fees and post-petition attorney's fees and costs shall be disallowed without prejudice.

3. Washington Mutual shall have an allowed secured prepetition arrearage claim in the amount of $26,862.69 to be paid through the debtor's confirmed Chapter 13 plan.

4. The debtor's objection to claim, including his claim for damages for Truth in Lending Act violations, is otherwise overruled.